### CALLIHAN v. WHITE.
#### No. 1996.

Court of Civil Appeals of Texas. Eastland.
March 29, 1940

Blanton & Blanton, of Albany, for appellant.

Floyd Jones, of Breckenridge, for appellee.

GRISSOM, Justice.

C. A. White sued J. F. Jacobs and George Callihan for the title and possession of 1,010 feet of 6⅝ inch pipe, or, in the alternative, for damages for the conversion thereof. Plaintiff alleged substantially as follows: That on March 3, 1936, White entered into a written contract with Jacobs whereby White rented to Jacobs said pipe for a period of 25 days for a consideration of 16¢ per foot, and wherein Jacobs was granted an option to purchase said pipe, within 25 days from March 3, 1936, at a price of 65¢ per foot. It was alleged that said contract further provided for the payment by Jacobs to White of $75 on or before March 7, 1936, to guarantee the expense of returning said pipe to White; that the contract provided in the event Jacobs exercised his option to purchase said pipe within 25 days, the rental paid, to-wit, $160, (which according to the contract should have been $161.60) would be applied on the purchase price. That the pipe was delivered to Jacobs and he paid White the sum of $160 covering the rental for 25 days; "That thereafter the said defendant paid the sum of Fifty ($50.00) Dollars on account. The said sum of Fifty ($50.00) Dollars was paid to the plaintiff by the defendant to guarantee the return of said pipe or casing,

which said amount was to cover trucking charges." White further alleged that Jacobs failed to exercise his option to purchase the pipe and failed to return the pipe to plaintiff at Breckenridge. Plaintiff sued for the title and possession of the pipe.

In the alternative, plaintiff alleged the pipe was rented to Jacobs under the terms and provisions of the written contract attached to plaintiff's petition and made a part thereof, and that Jacobs "agreed to pay the sum of sixty-five cents (65¢) per foot for the said pipe or the sum of $656", and to return the pipe free and clear of liens and in good condition and to pay a reasonable price for any damage done to the pipe. "This plaintiff would show unto the court the said casing was worth the sum of 65¢ per foot, and that the said price was reasonable and the usual price for such pipe at the time same was rented, and that the defendant has failed and refused to pay for the said pipe or any part thereof", but that Jacobs had sold the casing to some unknown party and had refused to pay therefor, wherefore, plaintiff alleged, he should recover damages from Jacobs "by reason of the wrongful and unlawful taking and conversion of said property" in the sum of $775. Plaintiff alleged a contract on the part of Jacobs to pay reasonable attorney's fees, which was alleged to be $250.

Plaintiff further alleged that "sometime after March 3, 1936 and prior to the time this cause of action was filed" Jacobs sold the pipe to Callihan, that it was converted by said defendants, that plaintiff had made demand upon both defendants for the "value" of said pipe converted by them; that its reasonable market value at the time and place of conversion by defendants was 75¢ per foot, or a total of $757.50.

Plaintiff prayed (1) that he have judgment against both defendants for the "right, title and possession and return" of said pipe to plaintiff at Breckenridge, and, in the alternative, (2) for judgment against Jacobs for the sum of $775, with interest at 6 per cent per annum, and for attorney's fees in the amount of $250, and (3) against both defendants for the sum of $757.50 with interest from the date of the conversion, etc.

Plaintiff in said petition, and, more specifically, in a trial amendment, alleged that the provision in the contract between Jacobs and White "that the party of the second part is this day paying party of the first part the sum of $160 to apply on the

purchase price" was a mutual mistake in that the said $160 represented a rental of 16¢ per foot upon said pipe, and that the $160 did not apply on the purchase price, unless and until Jacobs exercised his option to purchase said pipe within 25 days from the date of the contract, and that Jacobs failed to exercise his option.

The contract in question is as follows:

"This Agreement made and entered into in duplicate this 2nd day of March, 1936, by and between C. A. White of Stephens County, Texas, as first party, and J. F. Jacobs of McCulloch County, Texas, as second party,

"Witnesseth:

"First party by these presents for the consideration and covenants hereinafter named rents and lets to the second party the following described personal property, to-wit: 1010 feet 6⅝ inch pipe.

"Party of the first part warrants and represents that he is the lawful owner of the above described personal property and has good title thereto and the right to rent or sell the said property. Said party of the second part agrees to take the above described personal property in the condition in which the same is now in, and all the expenses in moving and making repairs that may be necessary for the use of the above described personal property shall be paid by the said second party, and when the terms of this agreement have been fully complied with, same shall become the absolute property of the second party; and in the event that the conditions and agreement herein contained are not complied with to return the same to the first party at Breckenridge, Stephens County, Texas, in as good condition as when received, usual wear and tear and damages by the elements excepted. It is further understood and agreed that if it becomes necessary to collect the money through the hands of an attorney or through court proceedings that the second party agrees to pay a reasonable attorney's fees and court costs. The consideration for the foregoing is as follows:

"The said second party agrees to pay to the first party for the use of the said above described personal property sixteen cents (16¢) per foot for the use of the said pipe as rental.

"Second party is drilling an oil and/or gas well on the following described property, to-wit: Block 26, College Addition

Townsight to the City of Baird, Callahan County, Texas

"The party of the second part agrees to pay the said sixteen cents (16¢) per foot for the rental of the said pipe, with the understanding that he has an option to purchase the said pipe within twenty-five days from the date of this contract at the price of sixty-five cents (65¢) per foot. The party of the second part is this day paying the party of the first part the sum of One Hundred Sixty ($160.00) Dollars to apply on purchase price, and Seventy-Five ($75.-00) on or before March 7, 1936. It is agreed and understood by and between the parties of the contract that if the pipe is returned free and clear of all liens and claims of all persons whomsoever and in as good condition as when received, usual wear and tear excepted, that the party of the first part shall return the sum of Seventy-Five ($75.00) Dollars to the party of the second part as a refund covering the payment made this day.

"It is agreed and understood that if the said pipe is returned in a damaged condition then to pay the fair and reasonable damages to the same.

"Witness our hands at Breckenridge, Texas, this 3rd day of March, 1936.

"C. A. White
"First Party
"J. F. Jacobs
"Second Party."

The contract was acknowledged before a notary by White and Jacobs.

The case was submitted to the jury upon two special issues: Special issue No. 1 was as follows: "Do you find from a preponderance of the evidence that it was mutually understood and agreed by and between C. A. White and J. F. Jacobs at the time the contract in question was entered into by and between the plaintiff, C. A. White, and the defendant, J. F. Jacobs, that the $160 paid by the said J. F. Jacobs to the said C. A. White was to be applied as rental on the pipe in question?" The jury answered the question, "Yes." In answer to special issue No. 2, the jury found that the reasonable market value of said pipe on or about April 4, 1936, at Baird, Texas, was 60¢ per foot. Jacobs failed to appear and answer, and judgment by default was taken against him.

The defendant Callihan answered, among other things, that the above instrument constituted a conditional sale contract, and, in legal effect, a mortgage, governed by Art. 5489, R.S.1925; that the pipe was delivered to Jacobs and removed to Callahan County with the knowledge of White; that the contract was not recorded; that Callihan purchased the pipe from Jacobs; that he was an innocent purchaser for value without notice of White's claim, and had paid Jacobs the market value of the pipe.

Upon the verdict the court rendered judgment for White against Callihan for $606 (evidently the value of the pipe at the time of its conversion, to-wit, 60¢ per foot, as found by the jury), and a judgment against Jacobs for the sum of $656.-50. However, the court found that Jacobs was entitled to a credit of $33.50 (evidently a part of the $50 paid by Jacobs to White about March 7, 1936, plaintiff having testified that the balance of said $50 payment was applied by him, in accordance with an agreement with Jacobs, to an account Jacobs owed White), leaving a judgment against Jacobs for the sum of $623.

The defendant Callihan has appealed.

Callihan objected to special issue No. 1, (2) "for the reason that the issue as drawn would allow the jury to alter the terms of a written contract without first having found that there was a mutual mistake in the execution of said contract", and (5) "for the reason that it does not properly charge upon the ultimate issue of fact to be decided by the jury, which is whether or not there was a mutual mistake by the parties to the contract in the execution thereof."

Callihan requested special issues inquiring (1) whether the inclusion in the contract of the provision "the party of the second part is this day paying the party of the first part the sum of $160, to apply on purchase price, and $75.00 on or before March 7, 1936", was a mutual mistake on the part of White and Jacobs, and (2) whether White acquiesced in the inclusion of said provision in the contract. Said issues were refused.

We are of the opinion, as contended by Callihan, that the answer of the jury to special issue No. 1 does not constitute a finding of mutual mistake. We are further of the opinion that plaintiff's testimony that Jacobs directed, in White's presence, the insertion of said clause in the contract, and that thereafter White signed the contract, affirmatively shows that the insertion of the provision in the contract was not a mutual mistake.

In Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 450, the question was whether or not the description of a 2.59-acre tract in a lease was · included 'therein by mutual mistake. The issue submitted to the jury was: "Do you find, from a preponderance of the evidence that it was mutually intended and agreed between Malinda Schuyler and J. H. Liles that the lease which was executed by Malinda Schuyler and Horace Schuyler in favor of the Sun Oil Company should cover and affect the 2.59 acre tract in question?" The issue was answered "No." Bennett contended that the answer to the issue was tantamount to a finding that the inclusion of the tract within the lease was the result of a mutual mistake. The appellate courts held such answer was not a finding of mutual mistake, and did not authorize reformation of the lease. The Supreme Court said: "Since the issue submitted and answered is not a finding of mutual mistake, it cannot support the judgment rendered by the trial court * * *."

That court further said:

"For another reason, it is our opinion that the issue and answer do not constitute a finding of mutual mistake which could serve as the basis for the reformation of the lease. In a case where the agreement of the parties has been reduced to writing and the effort on the part of one of· them is to avoid on account· of mistake the effect of a part of the written agreement, the mistake from or on account of which relief is sought is the incorporation in the agreement of terms or conditions not representing the true agreement of the parties. What the parties mutually intended and agreed is not the vital inquiry. The party seeking reformation must of course prove what the true agreement was, but his case is not made by proof that there was an agreement which .is at variance with the writing. He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake. * * *

"The question submitted to the jury was whether it found from a preponderance of the evidence that the parties mutually intended and agreed that the lease should· cover and affect the tract in controversy. This is not a submission of the true issue, namely, whether the clause of the lease with respect to adjoining land was embodied in the instrument through mutual mistake. The jury's answer means either that it invaded the province of the court and determined the intention and agreement of the parties by construing the lease 'or that, without finding that the clause appeared in the lease through mutual mistake, it merely undertook to determine from all of the evidence in the case what the parties intended and agreed. However the issue and answer are viewed, they cannot reasonably be construed as equivalent to a finding that the language manifesting the ·intention to include adjoining land was incorporated in the lease as the result of a mutual mistake of the parties."

Also, see Jones v. Sun Oil Co., Tex.Civ. App., 110 S.W.2d 80, writ refused; Gano v. Palo Pinto County, 71·Tex. 99, 8 S.W. 634; Waco Tap R. Co. v. Shirley, 45 Tex. 355, 377; Clemmens v. Kennedy, Tex.Civ. App., 68 S.W.2d 321, 323, writ refused; Dalton v. Dalton, Tex.Civ.App., 143 S.W. 241.

We think it is evident that the ultimate issue, to-wit, whether the provision in question was inserted in the contract by mutual mistake of the parties, was not submitted to the jury. We are further of the opinion that the evidence shows such provision was not inserted in the instrument by mutual mistake. The judgment finds no support in the jury's answer to special .issue No. 1.

 The defendant Callihan contends, in substance, that under plaintiff's pleadings, if sustained by the evidence, he could obtain from the court one of three inconsistent types of relief: (1) An award of title to and possession of the casing, (2) an award against the defendant Jacobs of damages for breach of contract for the contract price of the casing and attorney's fees under the contract, (such a judgment, however, must necessarily be based upon the theory that Jacobs exercised his option to purchase the pipe, or that there was a sale to Jacobs, independent of any question of Jacobs' exercise of his option. It would necessarily rest upon a finding of title in Jacobs and preclude any recovery against Callihan), (3) an award against both defendants in trover for the reasonable market value of the casing at the time of the conversion. Said defendant contends that the judgment gives plaintiff two of the three inconsistent types of relief, to-wit: an award of damages against Jacobs for breach of contract for the contract price of the casing, minus a credit, and an award

against Callihan in trover for the reasonable market value of the casing as found by the jury. That if plaintiff obtained a judgment against Jacobs for the contract price of the casing, he must treat the sale to Jacobs as complete and, of course, if title passed from White to Jacobs, Callihan is not guilty of conversion. We agree with the latter proposition. Plaintiff's pleading and evidence treat the conversion by Callihan and Jacobs as occurring at the time of the sale by Jacobs to Callihan of the pipe in question. The jury has found, in answer to special issue No. 2, that the value of the casing at that time was 60¢ per foot, or $606. The judgment against Callihan is for $606. The judgment against Jacobs is for $656.50, minus a credit of $33.50, heretofore mentioned, leaving a balance of $623. The judgment against Jacobs for $656.50 is evidently based upon the cost of the casing at 65¢ per foot, the amount agreed to be paid by Jacobs to White in the event Jacobs exercised his option to purchase the pipe. If Jacobs exercised such option and purchased the pipe, Callihan acquired it from the person holding title thereto, and is not guilty of conversion. If the judgment should be against the defendants for conversion, then since under the pleadings and evidence, if converted, it appears to have been converted by both at the same time, the judgment should be against them, jointly and severally, for the same amount, and the money left by Jacobs with White to pay the expenses of returning the pipe to White should have been entered as a credit on the judgment against each of the defendants. Under a judgment against such defendants for conversion, a payment by either of them of $606, less such credit, would, at least so far as plaintiff is concerned, constitute a payment of the judgment against the other defendant.

 We construe the contract to mean, insofar as is here material, that White for a consideration of $160 then paid, rented the casing to Jacobs for 25 days; that Jacobs had an option within 25 days to purchase said casing at 65¢ per foot; that in the event Jacobs did so exercise said option the rental payment of $160 should be credited upon the purchase price. With reference to the provision of payment of an additional $75 ($50 was actually paid) on or before March 7, 1936, we think it is plain such payment was intended to operate as a guaranty of the payment of expenses incident to the return of the pipe to White at Breckenridge, if Jacobs did not purchase it under his option.

We are further of the opinion that there is no evidence that Jacobs exercised his option to purchase, or ever acquired title to the casing. The letters from White's attorney to Jacobs were simply an offer to enter into a new contract. It is undisputed that Jacobs sold the casing to Callihan April 4, 1936. The jury has found the value of the casing at that time to be $606. Jacobs' possession being by virtue alone of the rental contract, regardless of Callihan's good faith and the fact that he paid the market price for the casing, he can not avoid liability as an innocent purchaser.

We, therefore, conclude the judgment should be and it is hereby modified so that White shall have and recover of and from Jacobs and Callihan, jointly and severally, the sum of $572.50, with interest at 6% per annum, as to Jacobs from April 4, 1936, and as to Callihan from January 16, 1939 (the date this suit was instituted against Callihan). Fidelity Union Ins. Co. v. Hutchins, Tex.Civ.App., 111 S.W.2d 292, 300.

As so modified, the judgment is affirmed, but the costs of the appeal are taxed against the plaintiff White.

Modified and affirmed.