## COX et al. v. SHANNON.

### No. 3607.

Court of Civil Appeals of Texas. Beaumont.

April 18, 1940.

Rehearing Denied May 4, 1940.

Lipscomb & Lipscomb, of Beaumont, and H. M. Kinard, of Orange, for appellants.

K. W. Stephenson, of Orange, for appellee.

O'QUINN, Justice.

On May 5, 1938, appellee, G. C. Shannon, owned and operated a filling station, store and garage in the town of Mauriceville, in Orange County, Texas. His dwelling was located about 20 feet from these buildings. Under written contracts he bought his gasoline from appellant Magnolia Petroleum Company. These contracts were executed by appellee, acting for himself, and by appellant Magnolia Petroleum Company.

This action was brought by appellee, Shannon, against the Magnolia Petroleum Company and Lausen Cox, the agent of the Magnolia Petroleum Company, to recover damages for the destruction by fire of his dwelling, store, filling station, garage, and certain personal property located therein, and for alleged personal injuries sustained by his wife at the time the fire occurred. Briefly, appellee alleged, in substance, that Lausen Cox was the wholesale distributing agent for appellant Magnolia Petroleum Company, and that Jack Dees, an employee of appellants, was delivering a wholesale quantity of gasoline to appellee's filling station on May 5, 1938, when because of the negligence of said employee, Dees, the gasoline was permitted to leak or flow upon the concrete floor of the store building and become ignited; that Mrs. Shannon, wife of appellant, was in the store at the time of the fire, and in trying to escape from the burning store building, she ran into and against some

object, striking her right hip and ankle against same, bruising and lacerating her hip and ankle; that she suffered burns upon her legs, and other portions of her body by reason of which she suffered damages in the sum of $10,000; that the market value of the residence destroyed was $1,500; that the market value of the garage destroyed was $850; that the market value of the store building and garage destroyed was $750; that the value of certain enumerated household goods was $450; the value of certain enumerated equipment, tools and machinery was $1,695; and that the value of other merchandise and fixtures located in the store and filling station destroyed by the fire was $658.65. And in the alternative that if it appear that said property did not have a market value, then that the value stated was its real or intrinsic value.

As before stated, appellee alleged that the fire that destroyed the property and caused the injuries to Mrs. Shannon, was caused by the negligence of one Dees, an employee of appellants. In substance and effect, the acts of negligence charged against appellants were: employment of an inexperienced and incompetent driver; making delivery of gasoline from the east door of the store instead of the front door; use of a coupled rather than a single hose in making delivery of the gasoline; failing to provide adequate and efficient hose; permitting gasoline to escape from the hose upon the cement floor of the store; permitting the agent to use two hose in bad state of repair; permitting gasoline to leak therefrom; permitting gasoline to flow upon the floor; not extinguishing the fire when the gasoline first became ignited; leaving the hose connected with the gasoline truck so as to permit gasoline to flow freely upon the floor of the store after the gasoline became ignited; failing to cut off the valve so as to keep the gasoline from flowing through the hose; in not cutting off the valve when the gasoline first began to leak; and in the alternative making a general allegation of negligence on the ground that the instrumentalities causing the fire were in the sole custody of defendants and that the fire and resulting damages would not have occurred but for some negligence of the defendants, the exact nature of which was to appellee unknown.

Defendants, appellants, answered by general demurrer, special exceptions, general denial, pleas of contributory negligence, and specially denied that they were under any obligation to pay appellee for the loss and damages occasioned by the fire because of two indemnification contracts made between appellee and appellant Magnolia Petroleum Company prior to the fire, each of which contained clauses indemnifying the Magnolia Petroleum Company against any and all liability for loss or damage, injury or casualty, to-wit:

(a) One of date December 10, 1937, in which it was stipulated:

That Shannon, referred to as customer "Shall protect and indemnify Company (meaning Magnolia Petroleum Company) against any and all liability for loss, damage, injury or casualty of any nature to Customer or to any person or property resulting directly or indirectly from the use of said equipment, or its existence or location on said premises, or from the storing of gasoline in, or withdrawing it from said equipment, or from its use in any manner, whether such loss, damage, injury or other casualty arises from negligence, or otherwise, and whether due to imperfection of said equipment or any part of it, whether latent or patent, or to any fault in the installation thereof, or caused from leakage, fire, or any cause whatever."

(b) One of date January 29, 1938, in which it was stipulated: "Buyer (meaning Shannon appellee) agrees to protect and indemnify Seller (meaning appellants) from and against any and all losses, damages, claims or suits which shall arise or grow out of any injury to, or death from of persons (including Buyer and employees of Seller and Buyer) or property (including property of Seller, Buyer and employees of either) caused by or resulting from the use or condition of said premises, tanks, pumps, equipment and other facilities, or from the sale, storage or delivery of products on said premises. Seller does not warrant or guarantee said pumps, tanks, equipment or facilities in any respect."

By supplemental petition, appellee replied to appellants' answer, and, among other things, alleged that the contracts set up by appellants were unilateral and

against public policy, as attempting to contract against one's own negligence; that said provisions in said contracts were included in said contracts by mutual mistake because representations were made to appellee by Lausen Cox, the agent and representative of appellant Magnolia Petroleum Company, in explaining the meaning of said provisions, that the non-liability provisions "only had to do with any injuries or damages that might occur outside of plaintiff's buildings, or, in other words, that said provisions only related to things that might occur at the gasoline pumps or when parties were being served with gasoline or other products," and prayed for a reformation of said contracts.

The case was submitted to a jury upon ninety five special issues, which were answered in favor of appellee, and judgment rendered in his favor for $6,350, and the judgment also reformed the contracts in the particulars mentioned (mutual mistake). The court entered an order on the last day of the term extending same for a period of thirty days for the purpose of concluding the trial of the case, expressly limiting it to matters then pending in the instant case only. Motion for a new trial was filed within the thirty days extension, was duly overruled, and appellants have brought this appeal.

On May 5, 1938, while appellants were attempting to deliver gasoline to appellee at his filling station, under the terms of their contract with him, the gasoline caught fire, destroying the personal property described in appellee's petition, and as a result of the fire appellee's wife received severe personal injuries.

This suit was brought by appellee against appellants, jointly and severally, for the damages suffered by him, proximately resulting from the fire. All, issues of negligence plead by appellee against appellants were found in his favor by the jury; and he was acquitted of all matters of contributory negligence alleged against him by appellants.

As a complete defense to the cause of action plead by appellee, appellants plead the two contracts set out above. In answer to this special plea, by supplemental petition appellee plead that Lausen Cox, as the agent of the Magnolia Petroleum Company, executed said contracts; that, in executing the contracts he, appellee, told Lausen Cox that he did not understand the meaning of said provisions in said contracts; that he was poorly educated, and knowing that Cox was an educated man, and believing that Cox was fully familiar with all the terms and provisions of the contracts and was clothed with authority to act for the Magnolia Petroleum Company in their execution and delivery, he explained to Cox that he was uneducated and did not comprehend the meaning of the provisions, and asked Cox to explain same to him; that Cox stated to him that the provisions were unimportant, that they were contained in all contracts signed by other parties, and that the contracts were of standard form, and stated further to him that said provisions only had to do with injuries or damages that might occur at the gasoline pumps or when parties were being served with gasoline or other products; that he relied upon the statements and representations made to him at the time by Lausen Cox and believed them to be true; that he confided in Cox and particularly relied upon the statements and representations of Cox in regard to the provisions—the provisions in said contracts specially plead by appellants—and that he would not have signed the contracts otherwise; that the representations made to him by Cox were made "as expressions of fact," and were not made "as expressions of opinions"; that he had good reason to believe, and that he did believe, that the statements and representations made to him by Cox were made in good faith and were true. He plead facts showing that he executed the contracts containing the provisions plead by appellants in defense, as the result of a mutual mistake between him and Lausen Cox; that he and Lausen Cox mutually believed that these provisions of the contracts only had to do with any injuries or damages that might occur outside of appellee's buildings, or, in other words, that the said provisions only related to things that might occur at the gasoline pumps or when parties were being served with gasoline or other products; that in executing the contracts neither he nor Lausen Cox, as agent for the Magnolia Petroleum Company, believed that said provisions in said contracts were subject to the construction now contended for by appellants, and that had he known that the contracts were subject to such construction he would not have executed them. He plead further that if the execu-

tion of the contracts by Lausen Cox was not the result of a mistake by him as to the meaning, that then in that event the said Lausen Cox fraudulently represented to him the meaning of the contracts, knowing that he would accept his construction in their execution and that he would not have executed the contracts had he known they were subject to the meaning now insisted upon by appellants; that upon the expiration of the original contracts executed in 1937, in the renewal contracts, the contracts in controversy, the same representations as to the meaning of said provisions were made by him to Cox and by Cox to him as in the execution of the original contracts. Appellee prayed that the contracts be reformed so as to state and express the actual terms and conditions agreed to and understood in their execution, and that if the contracts are not subject to reformation, that the conditions plead by appellants be stricken, and that the contracts "in such particulars be cancelled and held for naught."

The jury by its verdict found in appellee's favor on all issues submitted to them in avoidance of the contracts plead by appellants. Thus the jury found that appellee "was not able to comprehend or understand the meaning" of the paragraphs of the contracts plead by appellants; that appellee explained to Lausen Cox that he, appellee, did not understand "what was meant" by the terms and provisions of these sections, and that he believed at the time he signed the contracts that Lausen Cox was fully acquainted "with the meaning of all the terms and provisions thereof"; that he made inquiry of Lausen Cox "as to the true meaning" of the provisions in controversy; that Lausen Cox stated to appellee that the paragraphs in controversy "was not important," and "only had to do with the injuries and damages that might occur outside of" appellee's buildings; that appellee relied upon the representations made to him by Lausen Cox, and that he would not have signed the contracts had the representations not been made; that there was a mutual mistake between appellee and Lausen Cox as to the meaning of the paragraphs in said contracts plead by appellants; that Lausen Cox believed the representations made by him to appellee were true, and made such representations "as a statement or representation of fact," and in making such representations did not "express same as an opinion"; that the representations made by Lausen Cox to appellee were made "in good faith."

On the verdict of the jury, judgment was entered in appellee's favor against appellants, jointly and severally, for the damages assessed by the jury. And it was further ordered by the judgment that the provisions in the contracts plead by appellants in defense of appellee's cause of action be expunged from said contracts "because of mutual mistake and reformed in accordance with the true agreement of the parties." And the court being of the further opinion that the contracts should be reformed by inserting therein the true agreement had by the parties at the time of their execution, then the judgment proceeded to reform said contracts by inserting in the contract dated December 10, 1937, the following: "Customer hereby agrees that should any injury, damage or casualty be sustained by any person or persons outside of customer's buildings when being served with gasoline or otherwise, or should said equipment, or any property of any such person or persons be injured, damaged or destroyed by fire or otherwise as a result of any injury, damage or casualty happening or occurring outside of customer's buildings, then the customer not only agrees to protect the Company and save it harmless, but likewise agrees to pay the Company such damages as it may show itself entitled to receive as a result of any such injury, damage or destruction of said equipment or any part thereof."

And in the contract dated January 29, 1938, the following: "Customer hereby agrees that should any injury, damage or casualty be sustained by any person or persons outside of customer's buildings when being served with gasoline or otherwise, or should said equipment, or any property of any such person or persons be injured, damaged or destroyed by fire or otherwise, as a result of any injury, damage or casualty happening or occurring outside of customer's buildings, then customer not only agrees to protect the Company and save it harmless, but likewise agrees to pay Company such damages as it may show itself entitled to receive as a result of any such injury, damage or destruction of said equipment or any part thereof."

The provisions thus made a part of the contracts by the judgment, by its terms,

were inserted in said contracts in lieu of the provisions originally inserted therein, and struck therefrom by the judgment.

From the judgment entered against them, appellants have prosecuted this appeal.

■ By their first and second propositions, advanced under their general demurrer, appellants contend that appellee, by a supplemental petition, could not plead a defense to the contracts set up by them in their answer. The contention is that, by due order of pleading, appellee was bound to anticipate their defense, and, therefore, in his original petition plead facts in avoidance of the contracts in issue. This contention is denied. The true office of a supplemental petition is thus stated in 33 Tex.Jur., page 487: "The office of plaintiff's supplemental pleading is to answer, by way of reply, some new matter of fact injected into the case by the defendant."

See, also, Eldridge v. Poirier, Tex.Civ. App., 50 S.W.2d 888, writ refused. Appellee filed his supplemental petition pleading facts in avoidance of the contracts in issue, in due order of pleading.

■ We sustain appellants' contention that the contracts in issue were on a valuable consideration, and overrule the counter proposition that they were null and void, and so we set aside the verdict of the jury finding these issues in appellee's favor.

In view of the disposition we are making of the case, we pretermit a discussion of appellants' propositions that, as written, the contracts were binding on the parties thereto, and of appellee's counter propositions that, by their terms, the contracts were void and against public policy, in that they purported to relieve appellants from the legal consequences of their common law negligence in their execution.

Appellants contend that they were entitled to an instructed verdict on the following grounds, asserting in their propositions that the contracts were on a valuable consideration, and, as written, were binding on the contracting parties, and not subject to contradiction or reformation by parol testimony.

They say, first, that appellee, as a matter of law, could not plead in a supplemental petition facts in avoidance of the contracts; that appellee should have anticipated these contracts would be urged as a defense in his original petition, and in his original petition have plead facts in avoidance of them. What we have said above in overruling the first and second propositions under their general demurrer disposes of this contention as advanced on the facts.

■ They contend, second, that parol testimony was not admissible to vary or explain the contracts as executed and delivered. The general principle contended for by appellants, of course, is conceded. But parol evidence is admissible to establish the issue that certain stipulations and conditions of a written contract were induced by fraud, accident or mistake—in the instant case by mistake. On this point we quote from Judge Smedley's opinion, speaking for the Commission of Appeals, in Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 451: "In a case where the agreement of the parties has been reduced to writing and the effort on the part of one of them is to avoid on account of mistake the effect of a part of the written agreement, the mistake from or on account of which relief is sought is the incorporation in the agreement of terms or conditions not representing the true agreement of the parties. What the parties mutually intended and agreed is not the vital inquiry. The party seeking reformation must of course prove what the true agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake."

■ Appellee's pleading in avoidance of the contracts on the issue of mutual mistake conforms strictly to the proposition we have quoted from Judge Smedley's opinion. On this theory of the case, appellants were not entitled to an instructed verdict.

They contend, third, that the evidence was insufficient to establish the mistake plead by appellee, and that the jury's verdict finding these issues in appellee's favor is without support in the evidence. We give the following summary of the evidence on the jury's verdict (Q. and A. reduced to narrative form):.

Appellee testified: "Previous to the time I signed this contract dated the 10th of December, 1937, I discussed its terms with Mr. Lausen Cox. I was not able to understand the meaning of this particular provision—referring to the one in issue—and I would not sign it without it being explained. I was not able to understand it. At that time I knew Mr. Cox well; he was representing the Magnolia Petroleum Company at that time as its local agent, and presented this contract to me at his office. He delivered it to me in person. At that time I confided in Mr. Cox; I trusted him; I understood that he was an educated man. I knew that he had been representing the Magnolia Petroleum Company for a considerable period of time. When Mr. Cox and I were discussing the contract—well, I could tell you in my way. I looked over the contract with my best knowledge and wouldn't be able to understand half of it; so I told him I didn't understand it; it looked like that I didn't know what I was doing or getting into, something like that; so he looked at me and in a few words he said, 'Well, that won't affect you.' * * * And he just told me that it was a matter of form with the company, that everybody had to do that to handle their products, and I just taken it for myself that it wouldn't affect me or affect anything on my premises, why naturally I would be willing to sign the contract. In that conversation Mr. Cox told me that this was only to protect the equipment and the company; that anything that might occur outside, such as waiting on customers, anything that happened like fire broke out and burned a car up or damaged some person outside, that that was the purpose of this to protect them against anything that might happen on the premises, not including me. This conversation occurred in the office of the Magnolia Petroleum Company; Mr. Cox's office. I believed the statements made to me by Mr. Cox. I relied on what he told me—well, I had a lot of dealings with him and he would be fair, he would be fair with me in the dealings, so far as I know. In executing the contract, I took into consideration that Mr. Cox was an educated man. I really understood and knew he was an educated man, and naturally, my dealings with him, I could tell that and I relied upon him for that because—; and I relied on what he told me because he was acting as the agent of Magnolia Petroleum Company and had full charge of the affairs of Magnolia Petroleum Company in Orange County; I relied on that fact. I had the contract in my possession in Mr. Cox's office. The things that Mr. Cox told me, he told me as facts, and not as expressing his opinion; I wouldn't have signed the contract had Mr. Cox not made these statements to me. I asked Mr. Cox the direct question as to the meaning of the provisions of the contract I read to you a minute ago just what was meant by that. After Mr. Cox explained the contracts to me, I understood what he told me and relied on what he told me, and would not have signed the contracts had he not told me what he did and had I not believed that what he told me was true. On the 29th of January, 1938, I made another contract with Magnolia Petroleum Company whereby I agreed to purchase gasoline and its products; I signed that contract. (Appellee then proceeded to detail the circumstances under which he signed it, representations made to him by Lausen Cox as inducing its execution, in substance as stated above.) Previous to the time I signed the first contract, Mr. Cox told me he wanted to help me build up and try to build up some good business up there; my business was kinda dropped off; and he would kinda help me build it up. He didn't say he would profit by what he had told me; I believed that he would assist me in building up my business; and that had an influence on me. I believed everything Mr. Cox told me and I believed that he told me those things in good faith."

█ It is our conclusion that the evidence, as summarized, supports the verdict of the jury as against appellants' motion for an instructed verdict, and accordingly the third ground urged for an instructed verdict is overruled.

█ The seventh proposition brings forward exceptions to the court's charge that were advanced for the first time in their amended motion for a new trial. These exceptions present nothing for review. Article 2185, Vernon's Annotated Civil Statutes; Hines v. Jones, Tex.Civ.App., 225 S.W. 412; Guillot v. Halman, Tex.Civ.App., 91 S.W.2d 402.

█ The court did not err in refusing to submit appellants' requested issues pleading negligence against appellee in

the manner of the construction of his filling station. There is no contention that appellee created a trap for appellants, nor that the fire resulted as the result of hidden or concealed danger. Marshall v. San Jacinto Bldg. Co., Tex.Civ.App., 67 S.W. 2d 372; 45 C.J. 837; Texas & P. Ry. Co. v. Howell, Tex.Civ.App., 117 S.W.2d 857.

Appellants' thirteenth proposition is:

"It was affirmative error for the trial court to overrule defendants' sixty-fourth objection to the charge, wherein complaint was lodged against the submission of any issues to the jury calling for a finding as to 'representations or statements alleged to have been made by the defendant, Lausen Cox, for the reason that such special issues so submitted to the jury assume that Cox had authority from his principal to modify the terms of said contracts and to make representations at variance with the express provisions thereof.'

"This was error, not only for the reason here stated, but also because of the court's failure to submit the controverted issues as to (a) whether Cox had such authority; and (b) whether the defendant company had knowledge of the alleged representations; and (c) whether it ratified the alleged representations."

■ On the undisputed proof, Lausen Cox was the agent of Magnolia Petroleum Company in its execution of the contracts in controversy, and there was no evidence limiting the scope of his agency as to matters involved in the contracts, and as to their execution. As the agent of Magnolia Petroleum Company, when appellee advised him that he, appellee, did not understand the contracts, certainly he had the right, dealing in good faith with appellee, to explain the contracts to him, and his explanation, if accepted by appellee and believed by appellee to be true, and if appellee acted thereon in the execution of the contracts, was binding on Magnolia Petroleum Company.

■ Again, appellants present this point only by exception to the court's charge; they did not prepare a special issue and present it to the court with request for its submission. The jury found facts establishing Cox's agency for Magnolia Petroleum Company in the execution of the contracts. Since appellants did not prepare special issues and request their submission, they waived the points pointed out by their thirteenth proposition. Wichita Falls & O. R. Co. v. Pepper, Tex. Sup., 135 S.W.2d 79. Therefore under the Pepper case, the trial court had the right, which it exercised, to find as supplemental facts the issues to which the thirteenth proposition is directed.

Appellants complain of the questions submitting to the jury the issue of "real value" of the personal property destroyed by the fire on the ground that "each were erroneous in the form submitted, because such issues as worded assumed that the property had no market value, and that the real value therefore was the measure of damages." This proposition is overruled. On the undisputed proof the personal property had no "market value," as distinguished from its "real value" or "intrinsic" value. It would not serve any useful purpose to summarize the evidence on the issue of the "intrinsic" value of the property; appellants' statement does not impeach the findings by the jury. Appellee's testimony fully supports the findings.

■ On the issue of "intrinsic" value, the court did not err in receiving evidence as to the original cost of the personal property, its age, its present condition, the cost to replace it, etc. 17 Tex. Jur. 440, Section 163.

Without quoting the issue submitting the question of damages for the personal injuries received by Mrs. Shannon, we overrule appellants' contention that it "mislead the jury into an award of double damages."

■ On the supplemental petition of appellee, pleading facts in avoidance of the contract as plead by appellants, and on the evidence offered by him in support of his supplemental petition, and on the verdict of the jury finding in his favor the issues made by the supplemental petition, the court did not err in striking from the contracts the paragraphs plead by appellants in avoidance of liability and in reforming the contracts so as to speak the actual agreement as made by the parties— as mutually understood by them at the time the contracts were executed.

From what we have said it follows that the judgment of the lower court should be in all things affirmed, and it is so ordered.

Affirmed.