**BRYAN et al. v. DALLAS NAT. BANK.**

**No. 12801.**

Court of Civil Appeals of Texas. Dallas.

Nov. 11, 1939.

Rehearing Denied Dec. 9, 1939.

250

E. P. Bryan, of Dallas, for plaintiffs in error.

Hamilton, Lipscomb, Wood & Swift and Clifford McBride, all of Dallas, for defendant in error.

LOONEY, Justice.

Thad Else and wife, Mary (colored people), executed to P. P. Martinez five promissory notes, the first four aggregating $1,503.48, were secured by a first deed of trust on an improved lot in the City of Dallas, and the fifth note for $120 was secured by a second deed of trust on the same property. The deeds of trust were duly recorded, and contained identical provisions, authorizing Martinez to pay taxes and insurance premiums on the property, in the following language: "We further covenant that we will at all times during the continuance of this trust keep the buildings and improvements now or hereafter to be erected on said premises insured against loss by fire and tornado to the extent insurance can be obtained thereon * * * and to pay before the same shall become delinquent all taxes and assessments as may be levied or assessed against said premises or any part thereof. And it is expressly agreed that if the undersigned shall fail to effect said insurance and deliver such policies or to pay such taxes, then the said insurance may be effected and said taxes may be paid by the legal holder of said notes * * * and the sum so expended shall be a demand obligation and become a part of the debt hereby secured and shall draw interest at the rate of 10% per annum from date so expended until paid." On different dates between January, 1929, and June 29, 1935, Martinez paid various items of taxes and insurance premiums on the property. Thad Else made various payments on the indebtedness, but left an unpaid balance at the time of his death. He died intestate on September 9, 1933, leaving as his only heirs at law his widow, Mary, and a son, Clyde Else; no administration being opened on his estate, Mary conveyed her interest in the property to Clyde. Martinez having died October 9, 1935, defendant in error was duly appointed and qualified as independent executor of his estate. Clyde Else, being unable to pay the balance remaining unpaid of the encumbrance against the lot, and being threatened with foreclosure proceedings, joined by his wife on November 14, 1935, conveyed the property to Mrs. Minnie L. Bryan, wife of E. P. Bryan; the consideration clause of the conveyance being: "That we, Clyde Else and wife, Jeffie Else of the County of Dallas, State of Texas, for and in consideration of the sum of Thirty Five Dollars

cash in hand paid by Minnie L. Bryan out of her separate estate receipt of which is hereby acknowledged, and the further consideration of the promissory note of Minnie L. Bryan of even date herewith for the sum of Thirty Four Hundred Sixty Five & No/100 ($3465.00) Dollars, to be paid by her out of her separate funds, payable at our instance and request to C. W. Bryan, or order, and owned by him for the balance of the purchase money for the land here conveyed with vendor's lien retained on said land to secure same, the principal being due five years after date, and bearing interest from date at the rate of eight per cent per annum, interest payable semi-annually from this date, providing for the usual acceleration and 10 per cent attorney's fees, if placed in the hands of attorney for collection after due, or collected through the Probate Court. Said note is further secured by deed of trust of even date herewith to R. D. Seaton, Trustee, upon the hereinafter described land. Said land being taken by Minnie L. Bryan subject to a balance due on the principal of note payable to the order of P. P. Martinez, said balance being in the sum of $781.00."

We deem it appropriate at this point to state that, the note for $3,465, payable to C. W. Bryan, and the deed of trust securing same, recited in the deed from Clyde to Mrs. Bryan, are extraneous matters having no real connection with the sale by Clyde to Mrs. Bryan, but, it seems, was a Bryan family affair, C. W. Bryan being a son of Mr. and Mrs. Bryan, and the note was created to serve some purpose of Mrs. Bryan. So, eliminating this foreign matter, the consideration clause proper reads: "That we, Clyde Else and wife, Jeffie Else of the County of Dallas, State of Texas, for and in consideration of the sum of Thirty Five Dollars cash in hand paid by Minnie L. Bryan out of her separate estate receipt of which is hereby acknowledged, * * *. Said land being taken by Minnie L. Bryan subject to a balance due on the principal of note payable to the order of P. P. Martinez, said balance being in the sum of $781.00."

Defendant in error, as independent executor of the Martinez estate, instituted this suit against Mrs. Minnie L. Bryan and husband, E. P. Bryan, C. W. Bryan and wife, Ruth, Mary Else (widow of Thad), Clyde Else and wife, Jeffie, pleading, among other things, the deed from Clyde and Jef-

fie to Mrs. Bryan, alleging that, by its terms, the lot in question was conveyed to her subject to the Martinez claim of $781, and sought foreclosure of the lien of the trust deed as against all defendants; personal judgment, however, was not sought against either defendant.

Mary, Clyde and Jeffie Else disclaimed and the other defendants (the Bryans) answered, contesting the indebtedness and the validity of the lien, plead that, the Martinez notes and trust deed were usurious; that the cause of action asserted was barred by the two and four year statute of limitation; that the indebtedness had been paid; that the lot in question was the business homestead of Thad and Mary at the inception of the lien sought to be foreclosed; that the statement in the deed to the effect that the property was conveyed subject to the Martinez debt, being the result of a mutual mistake, constituted no part of the consideration for the conveyance, therefore should be stricken from the deed; that the estate was not entitled to recover the amount claimed for taxes and insurance premiums paid by Martinez on the property, because, prior to the conveyance by Clyde to Mrs. Bryan, she (through her husband E. P. Bryan, who acted as her agent throughout) inquired of representatives of the Martinez estate as to the full amount of its claim against the lot and was informed that the same amounted to $781 due on notes, no mention being made of the fact that any portion of the claim represented taxes and insurance premiums paid, therefore, the estate should be estopped to claim any amount for taxes and insurance premiums, and that, under the terms of the trust deed, Martinez was not authorized to pay taxes on the property until same became delinquent; alleging that some, if not all, of the taxes were paid before becoming delinquent, therefore, with reference to the amount of taxes thus paid, Martinez was a mere volunteer. At the conclusion of the evidence, the court instructed a verdict for defendant in error and rendered judgment accordingly, fixing the amount of its claim at $663.86, and foreclosed the lien of the second deed of trust, on the lot, as against all defendants, from which the Bryans appealed by writ of error.

The pivotal question, answer to which, we think, will compose practically all questions presented, is, whether the clause found in the deed from Clyde Else and wife

to Mrs. Bryan, reading "Said land being taken by Minnie L. Bryan subject to a balance due on the principal of note payable to the order of P. P. Martinez, said balance being in the sum of $781.00", was the result of a mutual mistake, as contended.

E. P. Bryan, who wrote the deed, alone testified on this issue. His testimony is to the effect that, he prepared two deeds, the first contained the clause just quoted, and, thereafter, prepared another which he intended to use, omitting the clause in question; but, by mistake, the first deed prepared was executed. Testifying that, he first wrote the deed containing "the subject to" clause, said: "Then afterwards I wrote another deed leaving that out and through mistake when I went to close up the deal I got this deed instead of the other one and that is how come that in there, through mistake. I did not notice that this was in there. That I had gotten the wrong instrument until after this suit was brought."

It is perfectly obvious that, there was no mutuality in regard to the mistake, as Bryan, alone, according to his own admissions, committed the mistake; hence, the evidence failed to raise an issue as to the alleged mutual mistake. In Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 450, Judge Smedley announced the controlling doctrine in the following language; he said: "If one of the parties intended that the lease cover and affect adjoining land owned by the lessor, there was no mutual mistake in the execution of the lease containing language which included such land. In the absence of fraud or inequitable conduct, a written instrument will not be reformed on account of mistake, unless the mistake is mutual; that is, a mistake common to both parties, both laboring under the same misconception in respect to the terms of the instrument. St. Paul Fire & Marine Ins. Co. v. Culwell (Tex. Com.App.) 62 S.W.2d 100; 36 Tex.Juris. p. 746, § 17, p. 750, § 19; 23 R.C.L. p. 327, § 20; note, 26 A.L.R. p. 501, and following; Black on Rescission and Cancellation (2d Ed.) vol. 1, p. 15, § 11, p. 396, § 128."

Having purchased the property subject to the Martinez claim of $781, we are of opinion that, Mrs. Bryan is precluded from questioning either the amount of the claim or the validity of the lien securing same. In Bookhout v. McGeorge, Tex.Civ.App., 65 S.W.2d 512, 520, we had occasion to consider this identical question, and disposed of same in the following language: "One purchasing real estate with knowledge of the existence of and in subordination to a mortgage, although the mortgage, as to the vendor, may be void, is bound thereby, and is estopped to thereafter dispute the validity of the lien. This doctrine was announced in Rice-Stix, etc., Co. v. First National Bank, 231 S.W. 386, 388, where the Commission of Appeals held that a purchaser of land, with knowledge that the vendor recognized as valid an existing lien, was estopped to challenge its validity, although the property conveyed, upon which the lien existed, was in fact the homestead of the vendor. Judge Spencer, speaking for the Commission on this occasion, said: 'The uncontroverted facts showing that the bank took the property subject to the record, which revealed the lien and with knowledge that Gullidge (vendor) recognized the lien as security to protect his indebtedness, it (the bank) is, as a matter of law, under such facts, estopped to deny the validity of the lien and the mortgagee is therefore entitled to a judgment of foreclosure.' To the same effect see Wooten Motor Co. v. First Bank (Tex.Com.App.) 281 S.W. 196, 197." Also, see Kansas City Life Ins. Co. v. Hudson, Tex.Civ.App., 71 S.W.2d 574, writ refused.

In view of the uncontroverted testimony of Clyde Else, and the admissions of Mr. Bryan that, before closing the trade, he knew the Martinez estate was asserting a secured claim for $781 against the property, the conclusion, we think, is inescapable that the claim constituted a part, in fact, the major part, of the consideration for the conveyance. Clyde Else, being examined by counsel for plaintiff in error, was asked:

"Q. How much were they trying to collect when they were threatening to sue you? A. $781. * * *

"Q. What was the deal between you and my wife with reference to that property? A. The deal between us was that you would give me $35 and that the rest of it would be paid (the rest of it was the Martinez estate claim). * * *

"Q. What about the $781? A. The $781 statement was sent to me but I don't know whether you had that into yours or not.

"Q. Was it deducted from the purchase price? A. Not that I know of.

"Q. You had no concern with the $781 did you? A. After I turned it over to you I didn't. * * *

"(On cross-examination) Q. When you deeded this property to Mrs. Minnie L. Bryan you knew that there was a debt on the property, that Mr. Martinez had a lien on it? A. Yes.

"Q. Was it or not your understanding when you deeded that property to Mrs. Bryan that they would take that debt and lien off your hands, that you would not have to pay the debt if they took the property? A. That is right. * * *

"Q. And did they agree to take the Martinez debt off of your hands? A. Yes.

"Q. Wasn't it your understanding— wasn't it understood between you and the purchaser that the property was to be sold to the purchaser subject to Mr. Martinez's debt? A. Yes, to their paying the debt off and owning the piece of property.

"Q. Yes. A. That was provided they would take the whole debt off. Now, the $35, which he paid me was to clear me assuring me that I would have no interest in it at all.

"(On re-direct examination) Q. You were willing to take the $35? A. They had started to sue me three or four times, and I had no $781 to pay off, and I did not have enough money to improve the building. I had no one to go to and get them to help me fix the building; and my idea was to get out of it.

"Q. You did not want to have a lawsuit with Mr. Martinez, did you? A. No, I had no way to beat the case with Mr. Martinez. I felt like it would have been silly for me to try to do it."

The witness further testified that, in his opinion, at the time of the transaction involved, the property was worth seven or eight hundred dollars. Mr. E. P. Bryan testified that, while considering purchasing the property, he requested the land agent who approached him on the subject, to get a statement from Mr. Martinez as to every cent of money that he claimed against that property; that the agent told witness there were two notes on which there was an unpaid balance of $781; also, that the attorney representing the Martinez estate 'phoned witness that there were two notes on which there was $781 due, but the attorney did not mention the fact that the claim included any amount for taxes or insurance premiums paid. In view of this testimony, we are of opinion that, the amount claimed by the Martinez estate was a part of the consideration for the conveyance by Clyde Else and wife to Mrs. Bryan, hence that, even if it had not been expressly so stated in the deed (as was done), nevertheless, under the undisputed facts, Mrs. Bryan would have taken the property charged with the lien indebtedness.

■ However, plaintiff in error contends that, at the time inquiry was made in regard to the amount of the Martinez claim against the property, the information obtained being that it was $781 due on notes, nothing being said in regard to the fact that the claim included taxes and insurance premiums, that defendant in error is now estopped to claim any amount not evidenced by notes. This insistence, we think, is based upon an erroneous construction of the provision of the deed of trust; the pertinent provision reads: "And it is expressly agreed that if the undersigned shall fail to effect said insurance and deliver such policies or to pay such taxes, then the said insurance may be effected and said taxes may be paid by the legal holder of said notes * * * and the sum so expended shall be a demand obligation and become a part of the debt hereby secured and shall draw interest at the rate of 10% per annum from date so expended until paid." We think the language "shall * * * become a part of the debt hereby secured, etc.", necessarily incorporated the sum or sums paid as taxes and insurance premiums into, and that, constructively, they became a part of the notes. Plaintiff in error was concerned only in the amount, and not as to the constituent elements, of the claim; hence, the omission to mention the fact that, the claim included taxes and insurance premiums paid by the holder of the notes, was not calculated to mislead plaintiff in error, nor do we think she was prejudiced by such omission.

■ It is also contended that Mr. Martinez was only authorized to pay delinquent taxes and, as some of the payments claimed to have been made were before the taxes became delinquent, that with reference to all such, he was a mere volunteer. We overrule this contention. The debtor was obligated to "pay before the same shall become delinquent all taxes and assessments as may be levied or assessed against said premises or any part thereof. And it is expressly agreed that if the un-

dersigned shall fail * * * to pay such taxes, * * * said taxes may be paid by the legal holder of said notes * * *". Obviously, it was beneficial alike to debtor and creditor that, taxes be paid before becoming delinquent, otherwise penalties would have been added, thus increasing the burden of indebtedness and diminishing correspondingly the value of the security.

Failing to find reversible error, all assignments and propositions are overruled and the judgment of the court below is affirmed.

Affirmed.