### WILLIAMS v. CITY OF NEW YORK INS. CO.

No. 4535.

Court of Civil Appeals of Texas. El Paso.

Oct. 9, 1947.

Rehearing Denied Oct. 30, 1947.

Second Rehearing Denied Nov. 20, 1947.

Klapproth & Hamilton, of Midland, for appellant.

Whitaker, Turpin, Kerr, Smith & Brooks, of Midland, for appellee.

McGILL, Justice.

Appellant instituted this suit against appellee and sought reformation of a written policy or contract of insurance issued by appellee to her and others, and after reformation, recovery thereunder for damages to a bulldozer. Trial was to a jury. Both parties moved for judgment on the verdict which consisted of answers to special issues. Appellee also moved for judgment non obstante veredicto. The court overruled appellant's motion and granted appellee's, and entered judgment that appellant take nothing.

Appellant's points are that the court erred in overruling her motions 'for judgment and for a new trial, and in sustaining appellee's motion for judgment non obstante veredicto. The parties will be here designated as in the trial court. The contract of insurance referred to was issued by defendant to plaintiff and others d/b/a Kay Williams Construction Company, on October 3, 1944. The Kay Williams Construction Company was a partnership engaged in contracting road and cement work. Plaintiff has acquired the interest of the other parties.

In consideration of a stated premium of $515 the policy issued insured in an amount not exceeding $41,200 the "following described property." Then followed a "schedule" in which were listed certain specific items of equipment, giving the amount of insurance on each item, totaling $41,200, and which provided that "each machine or interest to be deemed separately insured." It insured against direct loss or damage caused by among other hazards "(g) collision * * * while in transit by railroad and/or motor vehicles." This controversy arose over a rider or "floater" attached to the policy, dated March 29, 1945, and designated as "Contractors Equipment Floater." This rider, in consideration of an additional premium of $107.33, provided that three additional specific items of equipment, specifying the amount of insurance on each, should be added to the "schedule." It then contained the following: "on miscellaneous equipment, mostly small items not specifically scheduled, $8,000."

Plaintiff alleged:

"That at the time said rider or floater was attached, it was the mutual agreement and understanding between plaintiff, Kay Williams and P. J. Mims, one of the partners of Mims & Crane, local agents of defendant, City of New York Insurance Company and representative of the said defendant, City of New York Insurance Company, that said rider or floater was to be so written that the insurance was to cover and include not only the small items of miscellaneous which were not specifically scheduled, but was to also include and cover by insurance any emergency including future leased equipment, all of which items were to be in the amount of Eight Thousand and No/100 ($8,000.00) Dollars. Plaintiff alleges that defendant's agent, P. J. Mims, wrote out the aforementioned floater and by mistake in so writing said floater, failed to include, 'And to cover any

emergency including future leased equipment'. That said omission was a mistake of the scrivener in writing said part aforementioned of said floater, and plaintiff alleges that neither she, nor the defendant's agent, P. J. Mims, intended for the floater or rider to cover only miscellaneous equipment, mostly small items not specifically scheduled for Eight Thousand and No/100 ($8,000.00) Dollars, but that it was the mutual agreement and understanding that the Eight Thousand and No/100 ($8,000.00) Dollars coverage listed in said rider or floater was to cover any emergency including future leased equipment, as well as miscellaneous equipment, mostly small items not specifically scheduled."

She further alleged that subsequent to March 29, 1945, Kay Williams Construction Company leased a caterpillar tractor with bulldozer attached, and that on June 21, 1945, while moving the bulldozer from Abilene to Andrews, it was badly damaged in an accident between the truck and trailer of L. C. Jones Trucking Company and the truck and trailer of Kay Williams Construction Company which was transporting the bulldozer. She prayed that the rider or "floater" be reformed so as to read "on miscellaneous equipment, mostly small items not specifically scheduled and to include any emergency including future leased equipment" and when so reformed that she recover damages in the amount of $5,371.-34, this being the cost of repairs to the tractor and bulldozer and rental paid while such repairs were being made. Defendant answered by numerous special exceptions and general denial, and sworn denial that plaintiff or Kay Williams Construction Company had filed with it a sworn proof of loss within ninety days after the claimed loss, as provided in the policy, and specially denied that the "floater" of March 29, 1945, was written by P. J. Mims or Mims & Crane, and alleged that the "floater" and all pertinent parts of the contract were prepared by T. W. Scales & Company, of El Paso, Texas, and that there was no mutual mistake in the writing of the "floater" but that it was written exactly as was intended by the party writing it in exact accordance with the information possessed by the party preparing the "floater"; that immediately following the preparation of the "floater" a copy thereof was placed in possession of plaintiff and was accepted by her.

The court submitted three special issues. No. 1 and answer thereto is as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that at the time of the issuance of the Contractor's Equipment Floater, dated March 29, 1945, that it was the mutual understanding by and between the plaintiff, Kay Williams, and Percy J. Mims that the language therein 'On miscellaneous equipment, mostly small items not specifically scheduled—$8,-000.00' was meant to include and cover 'any emergency, including future leased equipment'. Answer yes or no."

"Answer: Yes."

No. 2 inquired as to reasonable and necessary cost of repairs made to the *tractor* and bulldozer; and No. 3 as to the amount of rentals paid to lessor while the *tractor* and the bulldozer were being repaired. No other issues were requested.

■ It is quite obvious that no issue on mutual mistake as alleged by plaintiff was submitted, and that the finding on Special Issue No. 1 is insufficient to warrant reformation of the contract. The true issues as made by the pleadings were not whether the language employed was meant to include "any emergency including future leased equipment", but whether the parties mutually agreed that the contract should cover "any emergency including future leased equipment" and whether such language was omitted from the rider by mutual mistake. Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, loc. cit. 451 (5); Waco Tap R. Co. v. Shirley, 45 Tex. 355; Lane v. Urbahn, Tex.Civ.App., 265 S.W. 1063.

■ Reformation was the very essence of the cause of action alleged by plaintiff. Since no issue was given or requested on mutual mistake as alleged, plaintiff's cause of action for reformation of the contract must be deemed waived under Rule 279, Texas Rules of Civil Procedure unless mutual mistake as alleged was established beyond issue. Appellant makes no contention that it was so established. We have

read the entire statement of facts. In our opinion the evidence is not only insufficient to show mutual mistake as alleged as a matter of law, but it is insufficient to raise the issue.

Negotiations leading up to the execution of the rider of March 29, 1945, were carried on between plaintiff and P. J. Mims of the firm of Mims & Crane, local agents of defendant at Midland. Mr. Mims died prior to the trial. Plaintiff testified that subsequent to the issuance of the policy on October 3, 1944, she had suffered the loss of an engine of a concrete mixer which had burned, and which the local agents advised her was not covered by the policy; that she wanted full coverage, that she checked her equipment with Mims and had from $2,000 to $2,500 in small articles; that it was mutually understood between her and Mims that the $8,000 item was to cover not only miscellaneous equipment but also "any emergency including future leased equipment"; anything that had not been covered or that could not be reported immediately, anything that they might have overlooked; that as far as she knew Mr. Mims either wrote the "floater" or had it written by someone. She did not definitely fix the time when her discussions with Mims took place. On cross examination she admitted that there was certain equipment that was not intended to be covered—some that there was no need to insure and some that she had not finished paying for, that a copy of the "floater" of March 29, 1945, was furnished her and that there were some corrections made in it, some small attachments were left out or a wrong serial number was given, that "we corrected it" and that she noticed the property therein described after the corrections were made. The following portion of her deposition was introduced:

"Q. Mrs. Williams, at the time of your talks with Mr. Mims, did you ever reach any agreement with him regarding what words would be used in making that cover-all provision? A. No, we never discussed it. * * *

"Q. Did you specifically agree in so many words or use some word that referred to leased equipment in entering into that $8,000.00? A. We discussed it before we were going to have leased equipment and that was to be brought into the policy.

"Q. On that occasion, when he came out to see you about that, did you then agree that that was to cover leased equipment? Did you at that time agree to it? A. I don't remember."

C. G. Whyburn, one of the partners of T. W. Scales & Company, testified that the "floater" of March 29, 1945, was prepared in his office under his supervision on information received by him in a telephone conversation with Mims. This information was that the Williams Construction Company owned some small equipment which had not previously been insured under the policy, and that Mims said "I want to provide some amount of insurance which will take care of presently owned small equipment and any additional amount of small equipment which she might buy"; that Mims said he thought $8,000 would be sufficient to include what "she" then had and some leeway; he referred to it as small miscellaneous equipment; he did not tell me the value of the miscellaneous equipment "she" had on hand or mention leased equipment, and that it was his understanding that the $8,000 item was to cover miscellaneous small equipment which "she" owned or might buy, and that the way he wrote the policy (referring to the rider of March 29, 1945) did express how he intended it "it expressed it exactly"; that the whole policy was predicated on ownership at the time of loss and it made no difference whether small items not specifically scheduled and not to be scheduled were on hand. He further testified that from an underwriting standpoint there was a difference in the risk to which an insurance company would be exposed as between owned property and leased property; that he would never issue a miscellaneous provision such as the rider in question that would include leased property, because there was no limitation as to the amount of equipment a concern might lease, and it could run up large values and build up a liability several times greater than on owned equipment; that he could know the financial status of the insured as far as ability to buy but not as to

the value of property which she might lease.

 It may be conceded that an issue was raised as to whether there was an understanding between plaintiff and Mims that the rider in question should cover "any emergency including future leased equipment" but there is no evidence that the quoted language was omitted from the written rider by mistake of the scrivener as alleged. Whyburn's testimony is positive that the rider was written so as to express his understanding of the contract exactly. He, of course, was referring to the contract between plaintiff and Mims as revealed to him by Mims in his telephone conversation with him. If there was a mutual understanding between plaintiff and Mims that the $8,000 item should cover "any emergency including future leased equipment" the evidence fails "to establish in the clearest and most satisfactory manner" or indeed in any manner that Mims' intention in this respect continued down to the time of the execution of the rider. Plaintiff's testimony is that her discussions with Mims leading up to the mutual understanding took place after the loss of the engine of the concrete mixer in February. The rider was not issued until March 29. In order for plaintiff to establish mutual mistake which would warrant reformation of the contract it was necessary that she show by the clearest and most satisfactory evidence that Mims' intention continued down to the time of the execution of the rider. There is no evidence that it did so continue. Whyburn's testimony negatives any such intention on the part of Mims at the time when the rider was issued. Therefore, the evidence fails to raise an issue of mutual mistake indispensable to warrant reformation of the contract. Waco Tap R. Co. v. Shirley, supra, 45 Tex. loc. cit. 377; Sun Oil Co. v. Bennett, supra, and authorities there cited. A strong reason for application of the rule invoked is here presented. The language which appellant claims was omitted by mutual mistake and which she seeks to write into the policy, according to her testimony, would insure against loss due to "any emergency" including losses expressly excepted by the policy, and would constitute such an innovation that as Whyburn testified, no company would write such insurance. Plaintiff did not allege that the equipment for loss of which she seeks to recover was covered by the rider of March 29, absent reformation. Her entire cause of action was grounded on reformation. Defendant timely excepted to special issue No. 1 submitted by the court because such issue had no support in the pleadings, therefore the issue was not tried by implied consent of the parties within the purview of Rule 67, R.C.P., nor was this defect in plaintiff's pleading waived under Rule 90, R.C.P. The issue is therefore immaterial and the answer thereto insufficient to form the basis of a judgment. The court did not err in rendering judgment non obstante veredicto.

The judgment is affirmed.

## On Motion for Rehearing.

 In her motion for rehearing appellant earnestly insists that the undisputed facts showed that she paid appellee a premium for an $8,000 insurance coverage worded in the rider of March 29, 1945: "On mixed equipment, mostly small items not specifically scheduled, $8,000.00," and that there was anywhere from $1500 minimum to $2500 maximum of small items or mixed equipment; that there is a difference between these amounts and the $8,000 specified which she bought and paid for as insurance protection. She then rather plangently asks: "What was that protection?" The answer is indicated in our original opinion. Regardless of what such protection was, plaintiff did not allege that the equipment for loss of which she sought to recover was covered by the rider of March 29, 1945, absent reformation. Her entire cause of action was grounded on reformation. As pointed out in our original opinion, the evidence did not raise an issue of mutual mistake essential to reformation, nor did the finding in answer to special issue No. 1 warrant reformation. In Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, loc. cit. 245 (10–13), the Court said:

"A plaintiff can recover, if at all, only on the cause of action pleaded by him. The office of a pleading is to define the issues to be tried. It is certainly the general rule

that an admission in a pleading, on which a party goes to trial, is taken against him. It is the further rule that the pleadings and the evidence must coincide. Finally, it is the rule that parties are restricted in the appellate court to the theory on which the case was tried in the lower court", citing numerous authorities.

This case was tried before the effective date of the Rules of Civil Procedure, although the opinion was delivered after the Rules became effective. The case has been cited on the point by the Supreme Court in the cases of Kousal v. Texas Power & Light Co., 142 Tex. 451, 179 S.W.2d 283, and Sorrells v. Coffield, 144 Tex. 31, 187 S.W.2d 980, each of which apparently was tried after the Rules became effective, since the opinions of the Supreme Court were delivered March 22, 1944, and May 9, 1945, respectively. The case was also cited and distinguished in American Mutual Liability Insurance Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844, which was tried after the Rules became effective. We think the rule enunciated in Safety Casualty Ins. Co. v. Wright, supra, is applicable. Should we be in error in this respect, nevertheless the answer to Special Issue No. 1 would not support recovery on the theory that the language of the rider is ambiguous. The language employed in the rider of March 29, 1945, evidences no intention of the parties to a mutual understanding such as that found by the jury. As said in Bauer v. Taylor, Tex.Civ.App., 118 S.W.2d 826, 827, w.r.:

" * * * If there was any such intention the written agreement did not undertake to express it. The failure of a written agreement to express an intention of the parties will not admit proof of such intention upon the theory that the writing is ambiguous. The rule which permits the introduction of parol evidence to show the meaning of an ambiguous writing has application only when the intention is expressed, but in uncertain language; never when the intention is not expressed at all, * * *."

It would be highly improper for this court to speculate on what the protection afforded by the rider was. Suffice it to say it afforded no protection for loss of the equipment for which plaintiff sought to recover.

The motion for a rehearing is overruled.