**R. L. McMURTRY, Appellant,**

v.

**Emory ADDINGTON, Appellee.**

No. 7096.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 29, 1962.

Rehearing Denied March 5, 1962.

See also 332 S.W.2d 407.

Fike & Hunter, Dalhart, Clayton, Martin & Harris, Amarillo, for appellant.

Richards & Ferguson, Dalhart, for appellee.

NORTHCUTT, Justice.

This is a suit in which appellee seeks to recover $5,000.00 paid by him to appellant at the time he agreed to purchase 235 head of cows from appellant.

Appellant listed with J. I. Wynn, a commission man of Amarillo, 235 head of cows for sale at $260.00 per head. Appellee had previously advised Tom Pugh that he was interested in buying some good young cows. Pugh learned of the Wynn listing and submitted these cows to appellee. Appellee being interested, they went to appellant's ranch in Dallam County to inspect the cattle and were there shown by appellant's ranch employee, Carl Daniels, all the cattle, except a few head, located on appellant's ranch. The cattle on the ranch at the time of showing included the 235 cows listed with Wynn, and some calves, 66 yearling heifers, some bulls, 27 head of registered cows, with some calves, and some registered heifers. Daniels showed all of the cattle on the ranch, except a few head, nothing being said to him or by him as to the cattle to be sold or purchased.

After having inspected the cattle appellee and Pugh met appellant in Amarillo and appellee purchased the 235 head of cows at $260.00 per head for delivery October 10, and made a payment of $5,000.00.

A few days prior to the time for delivery appellee instructed appellant not to mix the 27 head of registered cows and their calves with the other cows and was advised by appellant that the 27 head were not part of the 235 head sold to him. This was confirmed by Wynn, who informed Pugh that no registered cows were listed with him and he had never put up to him any registered cows for sale. On the day of delivery appellant offered to deliver the 235 head of cows and their calves which he insisted were the cattle purchased by appellee, but appellee, without examining such cattle, refused to accept them, insisting that the 27 cows and their calves were part of the 235 cows he had purchased, and

demanded that the $5,000.00 be returned to him. This being refused, he filed this suit.

The case was tried to a jury and the court overruled appellant's motion for an instructed verdict and after the jury had returned their verdict, entered judgment for appellee. Motion for new trial was overruled. From that judgment appellant perfected this appeal.

Before discussing the points of error, we will first discuss the grounds relied upon by the appellee to recover herein. Appellant contends that appellee relied upon only two grounds, being fraud in inducement of the making of the contract, and mutual mistake. Appellee contends he relied upon three grounds, being fraud in inducement of making of the contract, mutual mistake, and breach of the contract on the part of the appellant. Since both of the parties stated the case involved fraud and mutual mistake we will first consider the question as to the breach of contract.

Appellee pleaded that when he went to appellant's ranch to see the cattle Carl Daniels, a cowboy working on the ranch for the appellant, showed the cattle to appellee and represented to him that the 27 head of registered cattle he was shown were a part of the cattle to be purchased. Then the appellee pleaded: "Such representation upon the part of the defendant through his agent were not true, as hereinafter set forth, said 27 head of registered animals did not go with the sale of the cattle to the plaintiff. Such representation then and there constituted fraud upon the part of the defendant to induce the plaintiff to purchase said cattle. Plaintiff would not have purchased said cattle but for said representations."

Since appellee pleaded Daniels showed the cattle to him and represented the 27 head of registered animals did go with the sale but that said representation on Daniels' part were not true and such 27 head of registered animals did not go with the sale to the appellee it is acknowledging the

registered cattle were never actually sold to the appellee. Appellant listed for sale 235 head of cattle but never listed for sale any registered cattle. Appellee went to the ranch to inspect the cattle listed for sale and didn't go to buy or look at any registered cattle. Although appellee pleaded Daniels represented the 27 head went in the sale, he testified Daniels did not tell him the 27 head went with the deal.

■ General admission in trial pleadings must be regarded as judicial admission in that case, rather than ordinary admission, and require no proof of the admitted fact and authorize introduction of no evidence contrary thereto. Canales v. Bank of California, Tex.Civ.App., 316 S.W.2d 314, writ refused N.R.E. and the cases there cited; Taylor v. Catalon, 140 Tex. 38, 166 S.W.2d 102, by the Supreme Court. As shown by appellee's pleadings and evidence the 27 head of cattle did not go with the sale, consequently there was never any sale entered into as to the 27 head of cattle. The appellant, on direct examination by appellee's attorney, was asked if he told appellee there in the hotel that the 27 head of registered cattle did not go with the sale. The appellant's answer was: "No. There was only one thing that was said about the cows. I said, 'Pugh, how do you like those cows, those registered cows?' And he said they were a nice bunch of cows, and I said, 'the cows you are buying are better cows.' 'Well', he said, 'Daniels told us that.'" In this same connection the appellee testified in looking at the cows that they saw 130 head in one pasture, that they were good ones and they were better than the ones he (Daniels) called the thoroughbred cattle, registered cattle.

■ Further concerning the breach of contract, we must look to the appellee's pleadings. We are unable to see where appellee ever pleaded a contract between appellee and appellant whereby the appellant ever agreed to sell the 27 head of registered cattle and the appellee agreed to buy them, and that appellee breached the contract by failing to deliver the 27 head. Instead of so pleading the appellee pleads the 27 head did not go with the sale, but because of the representation made by Daniels that the animals appellee inspected were the animals to be purchased by the appellee were not true and constituted fraud upon the part of the defendant to induce him to purchase said cattle, and but for said false representations appellee would not have purchased said cattle. It is stated in Jennings v. Texas Farm Mortg. Co., 124 Tex. 593, 80 S.W.2d 931, by the Commission of Appeals, and opinion adopted by the Supreme Court as follows: "The plaintiff must recover in the right in which he sues and upon the facts stated in his pleadings as the basis of that right, and cannot recover on a right different from that asserted, it matters not what the prayer may be."

■ But should we be mistaken as to appellee not pleading a contract and a breach thereof, there is not any evidence in this record to sustain the submission of the court's special issue No. 4 as to a breach of the contract to deliver the cattle he had listed nor the answer of the jury thereto. Appellee shows by his own testimony that he would not take any cattle unless he received the 27 head and on the date of delivery he would not even go out to see if appellant was ready to deliver the cattle he listed for sale and did not go to receive the cattle and consequently could not and did not know whether appellant was ready, able and willing to deliver such cattle. Special Issue No. 4 asking if McMurtry was able, willing and ready to deliver to Addington the 235 head of cows and their calves that he had listed for sale with Mr. Wynn. Mr. McMurtry testified he had the 235 head of cows listed there to be delivered to Mr. Addington. There was no evidence to contradict Mr. McMurtry's evidence and since there was no evidence to the contrary, we must accept the evidence of Mr. McMurtry as true regardless of the jury's findings to the contrary.

At the close of all the evidence, the defendant, appellant here, made his motion for an instructed verdict. The court overruled the motion and gave the charge to the jury. Both parties requested certain special issues but the court failed to give any of them but submitted his own issues, which issues and the answers thereto were substantially to this effect: That the 235 head of cattle offered for sale by appellant included the 27 head of registered cattle; the 235 head that appellee agreed to buy included the 27 head of registered cattle; that appellee did not learn the 235 head of cattle did not include the 27 head of registered cattle before paying the $5,000.00; that appellant was not able, willing and ready to deliver to appellee the 235 head of cattle that he had listed for sale with Mr. Wynn and that there was not in this area a well established practice and custom that where a payment is made by a buyer for the purchase of cattle and the seller is ready, able and willing to deliver the cattle that he offered for sale to the buyer and the buyer agreed to purchase and the buyer refuses to take said cattle, that such payment is forfeited to the seller.

By appellant's first point of error it is contended the court erred in not granting appellant's motion for instructed verdict because appellee failed to establish fraud or mutual mistake by any probative evidence. By appellant's second point of error it is contended the issues submitted by the court were wholly insufficient to submit any theory of the case pleaded or relied upon by the appellee. The appellant had listed 235 head of non-registered cattle. Appellee testified that he was never interested in buying registered cows at all and did not go out to look at any registered cattle. Appellee went out and looked at practically all of appellant's cattle, and testified that practically all the cattle were better than the registered cattle. Appellee also testified that Daniels did not tell him the 27 registered cattle were going in the deal and that Daniels did not say anything about it. Appellee further testified that the reason Daniels asked him to look at the 27 head was because they were unusually large and that he never did ask Daniels, Pugh or appellant whether the 27 head went in the deal. Appellee said that on October 10, the day of the delivery, either that day or before or after, or at any time he never went out to see the 235 head that appellant had ready to deliver. The undisputed evidence is that the appellant had the 235 head he had listed for sale ready to deliver to appellee on the delivery date.

The appellee after making the above statements of definite facts did not subsequently modify or explain how he was mistaken as to such evidence. In the case of Stanolind Oil & Gas Co. et al. v. State et al., 136 Tex. 5, 145 S.W.2d 569, by the Supreme Court, it is stated:

"The authorities hold that where a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admissions, and cannot successfully complain if the court directs a verdict against him. Watkins Co. et al. v. King, Tex.Civ. App., 83 S.W.2d 405; Southern Surety Co. v. Inabnit et al., Tex.Civ.App., 1 S.W.2d 412; Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24; Nerio v. Christen, Tex.Civ.App., 189 S.W. 1038; Smith v. Boston Elevated Ry. Co., 1 Cir., 184 F. 387, 37 L.R.A.,N.S., 429; Hubbs-Diggs Co. v. Mitchell, Tex.Civ.App., 256 S.W. 702; Stephenson v. Barrow, Tex.Com.App., 15 S.W.2d 575, 576, 577; Broad River Lumber Co. v. Middleby, 4 Cir., 194 F. 817, 821, par. 3; Harlow v. Leclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973, 976, 977, and note page 979 et seq.; 17 Tex.Jur., p. 577 et seq."

If no one told appellee the 27 head of registered cattle went in the sale and he

inspected practically the entire herd of cattle, and knew he was not buying all the cattle, he could not have been misled by any fraud.

The appellee has never at any time excepted to or assigned any error to any action taken by the trial court and seeks to sustain the judgment upon the record as made. The trial court entered judgment upon the word of the jury declaring that the contract and agreement between the parties regarding the sale of the cattle in all things rescinded and canceled and gave the appellee judgment for the $5,000.00 as against the defendant.

The first issue submitted by the court was whether the 235 head of cattle offered for sale by Mr. McMurtry included the 27 head of registered cattle. The undisputed record is that the listing given to Mr. Wynn by Mr. McMurtry as to the cattle to be sold did not include any registered cattle. There is no evidence that Mr. McMurtry ever offered for sale to Mr. Addington any registered cattle. As heretofore stated Mr. Addington testified that he did not go to look at any registered cattle and was not interested in buying any registered cattle. The second issue was whether the 235 head of cattle that Mr. Addington agreed to buy included the 27 head of registered cattle. The appellant objected to special issue No. 2 and pointed out to the court the effect of the issue in stating that Addington agreed to buy instead of what he thought he was buying but the objection was overruled by the trial court. Webster defines *"agreed"* as "United or settled in or by a common opinion or consent. Can two walk together, except they be agreed. Amos III:3" Mr. Addington might have thought he was buying the 27 registered cattle but there was no evidence of an agreement between him and Mr. McMurtry to that effect.

■ We think special issues Nos. 1, 2, and 4 are the only issues to be considered in connection with the appellee's contention as to a contract and a breach thereof and also as to fraud and/or mutual mis-take. We have heretofore given our views as to the contract and breach thereof. We find no fraud and hold there was no mutual mistake shown under the record. There is nothing in this record to show that Mr. McMurtry had any knowledge that Mr. Addington was mistaken and thought he was buying the registered cattle, and all Mr. McMurtry had listed for sale were the un-registered cattle he intended to sell to Mr. Addington. Sun Oil Co. v. Bennett et al., 125 Tex. 540, 84 S.W.2d 447, by the Commission of Appeals, and adopted by the Supreme Court; Bryan et al. v. Dallas National Bank, Tex.Civ.App., 135 S.W.2d 249, writ dismissed, judgment correct; Williams v. City of New York Ins. Co., Tex.Civ.App., 210 S.W.2d 219, writ refused, N.R.E.

■ Where the appellee did not prove a contract and breach thereof mutual mistake or fraud, he was not entitled to recover the money he had advanced in part performance of the contract. It is stated in the case of Fink et al. v. Hough et al., Tex.Civ.App., 153 S.W. 676, writ refused as follows:

"The money, under the contract, was part of the purchase price for the land, and under a long line of decisions cannot be recovered by appellees. In the case of Estes v. Browning, 11 Tex. 237, 60 Am.Dec. 238, it is said: 'A party who has advanced money or done any act in part performance of the agreement, and then stops and refuses to proceed and fulfill his stipulation according to the contract, has never been suffered to recover for what has been thus advanced or done; and it would be an alarming doctrine that parties might violate their contract because they chose to do so, and make their own infraction the basis of an action for money had and received.' Also to same effect are the cases of Pell v. Chandos, [Tex.Civ.App.,] 27 S.W. 48; Banks v. McQuatters, [Tex.Civ.App.,] 57 S.W. 334; Lipscomb v. Fuqua, 55 Tex.Civ. App. 535, 121 S.W. 193."

From what has been said, we are of the opinion and so hold that the judgment of the trial court should be reversed and judgment rendered that the appellee take nothing.