## SUN OIL COMPANY v. H. D. BENNETT ET AL.

No. 6875. Decided June 5, 1935.
Rehearing overruled July 10, 1935.
(84 S. W., 2d Series, 447.)

*T. N. Jones,* of Tyler, *T. L. Foster* and *J. W. Timmins,* both of Dallas, for plaintiff in error.

On proposition that land in controversy was included in the lease. Burleson v. Whaley, 299 S. W., 718; Smith v. Clay, 56 S. W., 74; Harlowe v. Higgins, 84 Texas, 107, 19 S. W., 364; Smith v. Westfall, 76 Texas, 509, 13 S. W., 540; Cullers v. Platt, 81 Texas, 258, 16 S. W., 1003.

*Brachfield & Wolfe,* of Henderson, *Ramey, Calhoun & Marsh,* of Tyler, and *C. S. Bradley,* of Groesbeck, for defendant in error.

A clause in an oil and gas lease to the effect that it is the intention of the lessor to include within the terms of the lease all other lands in or claimed by the lessor in the same survey in which the land described is situated, will not operate to cause said lease to cover another separate and distinct tract of land owned by the lessor, even though the same is situated in the same survey as the land described. McAnally v. Texas Co., 124 Texas, 196, 76 S. W. (2d) 997; Head v. Hunnicutt, 172 Ala., 48, 55 So., 161; San Antonio Street Ry Co. v. Adams, 87 Texas, 125.

One who executes an instrument of conveyance which includes a separate parcel of property not within the scope of the

agreement of the parties, by mistake on his part or the fraud or inequitable conduct of the other contracting party may have the conveyance reformed so as to conform to the agreement, where the interest of no third party has intervened, and this is true, although he may not have read the paper. Armendariz v. Oberstone, 115 Texas, 446, 283 S. W., 479; Waco Tap. Ry. Co. v. Shirley, 45 Texas, 355; Copper Grocery Co. v. Strange, 18 S. W. (2d) 609; 36 Tex. Jur., 773.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The matter in controversy herein is the seven-eighths leasehold interest or working interest covering and affecting six-sevenths of the oil, gas and other minerals in a tract of land containing 2.59 acres in the J. B. Cadena league in Rusk County. Plaintiff in error Sun Oil Company claims this interest under an oil and gas lease executed to it as leasee by defendant in error Malinda Schuyler, joined by her son, Horace Schuyler, on July 21, 1930, while defendants in error H. D. Bennett, Mrs. Katherine Ryan, Geo. W. Scheultz and John G. Phillips, hereinafter referred to as defendants in error Bennett et al., claim to be the owners of said leasehold or working interest under an oil and gas lease subsequently executed by the same lessor to Bennett as lessee. Defendants in error Bennett et al. contend that the lease to plaintiff in error did not cover the 2.59 acre tract, and in the alternative that if it did, the language covering it was inserted in the lease as the result of mutual mistake. Judgment of the trial court in favor of said defendants in error and against plaintiff in error was affirmed by the Court of Civil Appeals. 77 S. W. (2d) 1086.

The oil and gas lease to Sun Oil Company was executed upon the same printed form that was used in the execution of the lease construed in Sun Oil Company v. Burns et al., this day decided (post 549). Written in the lease by typewriter in a space left in the printed form for description of the land are descriptions by metes and bounds of two tracts, one of 34 acres in a Block 35, and the other of 42 acres out of the J. B. Cadena league. Immediately following the typewritten descriptions of the two tracts, the lease contains as a part of the printed form the following clause:

"It being the intention, however, of lessor to include within the terms of this lease not only the above described land, but also any and all other land owned or claimed by lessor in said survey or surveys in which the above described land is situated

or in adjoining surveys and adjoining the above described land."

Following this clause there is written in the lease by typewriter the phrase:

"Except however a fifty and seventy-two acre tract adjoining this tract on the East and in said survey, now under lease."

Then follow the habendum clause and after it the various terms and conditions of the lease, all being printed except that the name of the depository for rentals and the amount of the annual rentals are inserted by typewriter.

The 2.59 acre tract in controversy is a long, narrow strip of land, 3342 feet or 1203.1 varas long and 33 1/3 feet or 12 varas wide, and lies immediately north of and adjoins the 42 acre tract described in the lease by metes and bounds, its south line coinciding with the north line of the 42 acre tract for its full length of 3342 feet. At the time the lease to Sun Oil Company was executed and delivered the 2.59 acre tract, as well as the two larger tracts described in the lease by metes and bounds, was owned and claimed by lessor Malinda Schuyler.

1 In accordance with Sun Oil Company v. Burns et al. (supra), this day decided, we hold that the lessor's intention in include the land in controversy in the lease to Sun Oil Company clearly and unmistakeably appears from the language of the lease. The trial court should have rendered judgment in favor of plaintitff in error, unless defendants in error have established their alternative position that the language of the lease manifesting the intention to include in it the land in controversy was inserted as the result of mutual mistake.

By partition deed dated March 30, 1921, executed by Malinda Schuyler and several others, all children and heirs of Rich and Mary Lee, the tract of 42 acres, as the same is described by metes and bounds in the lease to plaintitff in error, was set apart to Malinda Schuyler. By the same deed there were set apart to Mary Flanagan two tracts, one of 39½ acres lying immediately south of the 42 acre tract, and the other the 2.59 acre tract in controversy lying immediately north of the 42 acre tract. This deed, as do other deeds and instruments affecting it in the record, describes the 2.59 acre tract as containing 2 2/3 acres. On November 23, 1921, Malinda Schuyler and Mary Flanagan made an exchange of land. Malinda Schuyler conveyed to Mary Flanagan 2 2/3 acres off the west end of the 42 acre tract, and Mary Flanagan conveyed to Malinda Schuyler the 2.59 acre tract in controversy. After these

conveyances were made Malinda Schuyler owned of what had been the 42 acre tract 38.61 acres of land. The 2.59 acre tract was not separated by fence from the 42 acre tract.

Malinda Schuyler and her son, Horace, are negroes. He is well educated and intelligent. She depended upon him to manage her business. According to his testimony, Malinda Schuyler owned at the time the lease to plaintiff in error was executed five tracts of land, a 50 acre tract, a 72 acre tract, a 34 acre tract, a 42 acre tract, and a 2 2/3 acre tract (the tract in controversy), and he owned a 38 acre tract and a 50 acre tract. The 72 acres and the 50 acres owned by Malinda Schuyler had theretofore been leased to Stanolind Oil Company. J. H. Liles, representing plaintiff in error, entered into negotiations with Horace Schuyler for the purpose of leasing land belonging to Horace and his mother. He was accompanied by J. F. Mason, who was present at the negotiations and as notary public took the acknowledgements when the leases were executed. Mr. Mason, a white man and a neighbor of Malinda and Horace Schuyler, was dead at the time of the trial. Mr. Liles offered to pay $1.50 per acre for the leases, but did not wish to lease the 50 acre tract which Horace owned. Horace told him he would accept the offer if he would lease all four tracts, the 42 acre tract and the 34 acre tract owned by Malinda, and the 38 acre tract and the 50 acre tract owned by Horace, and Mr. Liles agreed to take all four tracts. Because no field notes were available, it was agreed that the leases would be executed without the descriptions of the several tracts, and that Mr. Liles would thereafter procure the descriptions from the records and insert them in the leases. The lease of Malinda's land was complete when she signed and acknowledged it except that it did not contain the descriptions of the 42 acre tract and the 34 acre tract by metes and bounds. These were later inserted by Mr. Liles.

Both Horace and Malinda testified that in the negotiations nothing was said about the 2 2/3 acre tract, the tract in controversy, that it was not mentioned, that the discussion was about the four tracts, that they, Horace and Malinda, did not intend to include the 2 2/3 acre tract in the lease, but intended to keep it "to see if it would produce oil." They testified that they did not know that the clause with respect to adjoining land was in the lease, that they did not read the lease, and that it was not read to them.

Liles testified that at the time the lease was executed he read to Malinda and Horace the clause with respect to adjoin-

ing land, explaining it to them and telling them it was necessary to write the exception into the lease because Malinda had already leased two tracts, that he told them they were leasing all the land that they had, that he intended to lease all the land that they owned except what was excepted in the lease, and that he intended to lease any land that they owned adjoining the 42 acres. He further testified that in the negotiations nothing was said about the 2 2/3 acre tract, the tract in controversy, that he knew nothing about it and made no search for a description of it, and that he used in inserting the descriptions by metes and bounds the description of the 42 acres as partitioned to Malinda, not knowing about the exchange between Malinda and Mary Flanagan. At the time the lease to plaintiff in error was executed and the consideration of $1.50 per acre paid, oil had not been discovered in the East Texas field. About two months later, and after the Joiner well, which was four miles distant from her land, had been completed, tested and found to contain oil, Malinda Schuyler executed an oil and gas lease covering the tract in controversy to defendant in error H. D. Bennett, who paid her $500 for the lease and one-half of the royalty.

In their supplemental petition defendants in error Bennett et al. alleged in the alternative that, if it should be held that the lease to Sun Oil Company by its terms covered and affected the 2.59 acre tract, then the incorporation in said lease of terms and provisions to such effect was unintended by either the lessors or the lessee, but was the result of a mutual mistake of said parties, and was not in accordance with the agreement or understanding of either or any of them. The prayer was for judgment divesting Sun Oil Company of any and all title in and to the oil and gas leasehold estate, and in the alternative that the lease to Sun Oil Company be reformed so as to exclude from the operation thereof the 2.59 acre tract.

The only issue submitted to and answered by the jury which has any relation to the mutual mistake alleged is as follows: .

"Do you find, from a preponderance of the evidence that it was mutually intended and agreed between Malinda Schuyler and J. H. Liles that the lease which was executed by Malinda Schuyler and Horace Schuyler in favor of the Sun Oil Company should cover and affect the 2.59 acre tract in question? Answer 'Yes' or 'No.'"

This issue was answered no. Defendants in error made no objection to the issue, and requested the submission of no other issue. The decree did not reform the lease. It merely adjudged

that defendants in error Bennett et al. rather than plaintiff in error were the owners of the leasehold or working interest in controversy.

2   Defendants in error Bennett et al. contend that the answer of the jury to the issue above quoted is tantamount to a finding that the inclusion of the 2.59 acre tract within the terms of the lease was the result of a mutual mistake.  The Court of Civil Appeals sustained the contention of plaintiff in error, holding that the jury's answer to the issue submitted was not a finding of mutual mistake and did not authorize reformation of the lease.  In our opinion the construction given by the Court of Civil Appeals to the issue and answer is correct.  The jury merely found that *both parties* to the lease *did not* intend and agree that it should cover and affect the tract in controversy.  This finding does not negative the existence of an intention on the part of one of the parties that the lease include the tract.  If one of the parties intended that the lease cover and affect adjoining land owned by the lessor, there was no mutual mistake in the execution of the lease containing language which included such land.  In the absence of fraud or inequitable conduct, a written instrument will not be reformed on account of mistake unless the mistake is mutual, that is, a mistake common to both parties, both laboring under the same misconception in respect to the terms of the instrument.  St. Paul Fire & Marine Ins. Co. v. Culwell (Com. App.), 62 S. W. (2d) 100, 36 Tex. Juris., p. 746, sec. 17, p. 750, sec. 19; 23 R. C. L., p. 327, sec. 20; Note 26 A. L. R., pp. 501 and following; Black on Rescission and Cancellation (2d Ed.) vol. 1, p. 15, sec. 11, p. 396, sec. 128.

3   The presumption arose from the lease that it represented the true agreement and intention of the parties; and the burden rested upon defendants in error to prove the alleged mistake and that it was mutual. 23 R. C. L., p. 365, sec. 65; 29 Tex. Juris., p. 718, sec. 12; 36 Tex. Juris., p. 779, sec. 35. The mutual mistake alleged was an independent ground of recovery, an issue vital to recovery by defendants in error Bennett et al. The lease to plaintiff in error, expressing clearly the agreement that it should cover adjoining land owned by lessor, stood as a bar to judgment in favor of said defendants in error until they established the mutual mistake.  Since the issue submitted and answered is not a finding of mutual mistake, it cannot support the judgment rendered by the trial court and affirmed by the Court of Civil Appeals. Ormsby v. Ratcliff, 117 Texas, 242, 1 S. W. (2d) 1084; Inter-

national-Great Northern R. Co. v. Casey (Com. App.), 42 S. W. (2d) 669, 671; Continental Oil Co. v. Berry, 52 S. W. (2d) 953, 955 (application for writ of error refused).

For another reason, it is our opinion that the issue and answer do not constitute a finding of mutual mistake which could serve as the basis for reformation of the lease. In a case where the agreement of the parties has been reduced to writing and the effort on the part of one of them is to avoid on account of mistake the effect of a part of the written agreement, the mistake from or on account of which relief is sought is the incorporation in the agreement of terms or conditions not representing the true agreement of the parties. What the parties mutually intended and agreed is not the vital inquiry. The party seeking reformation must of course prove what the true agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake. Waco Tap R. Co. v. Shirley. 45 Texas, 355; Moore v. Giesecke, 76 Texas, 543, 547, 13 S. W., 290; Kelley v. Ward, 94 Texas, 289, 60 S. W., 311; Clemmens v. Kennedy, 68 S. W. (2d) 321 (application for writ of error refused); Lane v. Urbahn, 265 S. W., 1063; Dalton v. Dalton, 143 S. W., 241; Litteral v. Bevins, 186 Ky., 514, 217 S. W., 369.

When once negotiations have ripened into a written instrument executed by the parties, and the instrument is plain and unambiguous, the agreement and the intention of the parties, in the absence of fraud, accident or mutual mistake are to be determined by the court as a matter of law. Sun Oil Co. v. Burns, this day decided (supra), and authorities there cited; Graham's Estate v. Stewart, 15 S. W. (2d) 72 (application for writ of error refused), and authorities there cited. The question submitted to the jury was whether it found from a preponderance of the evidence that the parties mutually intended and agreed that the lease should cover and affect the tract in controversy. This is not a submission of the true issue, namely, whether the clause of the lease with respect to adjoining land was embodied in the instrument through mutual mistake. The jury's answer means either that it invaded the province of the court and determined the intention and agreement of the parties by construing the lease, or that, without finding that the clause appeared in the lease through mutual mistake, it merely undertook to determine from all of the evidence in the case what the

parties intended and agreed. However the issue and answer are viewed, they cannot reasonably be construed as equivalent to a finding that the language manifesting the intention to include adjoining land was incorporated in the lease as the result of a *mutual* mistake of the parties.

It becomes our duty to render the judgment which the trial court should have rendered unless it appears that justice would be better served by remanding the cause for another trial. The statement of facts, which we have carefully read, contains nothing suggesting that any other or different evidence bearing upon any issue or possible issue could be had. The case appears to have been fully developed. The only three persons who participated in the negotiations for the execution of the lease to plaintiff in error testified fully and at length. The substance of their testimony is set out above. No other person heard or was present during the negotiations except Mr. Mason, the notary public, who is dead.

The evidence viewed most favorably to defendants in error fails, in our opinion, to raise the issue of mutual mistake. According to the testimony of Malinda and Horace Schuyler, they did not agree to lease to plaintiff in error the tract in controversy, but intended to lease only the two larger tracts described in Malinda's lease by metes and bounds, and knew nothing of the clause including the adjoining land. They gave no testimony, however, from which it could reasonably be inferred that Liles through mistake caused or permitted the clause as to adjoining land to appear in the lease, or that Liles did not intend that the lease should contain such clause. Neither Horace nor Malinda testified that Liles either agreed or stated that he was leasing no other land belonging to Malinda than the 42 acre and the 34 acre tracts. The extent of their testimony as to what Liles said was that only the 42 acres and the 34 acres were discussed as tracts to be leased from Malinda, that Liles agreed to procure descriptions of these two tracts from the records and insert them in the lease, and that no mention was made of the 2 2/3 acre tract. This testimony, which is but negative in its nature, does not warrant or support a finding of the mutual mistake alleged, especially in view of the settled rule that one who seeks reformation must prove both the fact of mistake and that the mistake was mutual, by clear, exact and satisfactory evidence. 29 Tex. Juris., p. 720, sec. 12; 36 Tex. Juris., p. 779, sec. 35, p. 783, sec. 37; 23 R. C. L., p. 369, sec. 67; Note 26 A. L. R., pp. 497 and following.

There is no suggestion in the testimony of Malinda or Hor-

ace that Liles did anything to conceal from they any part of the contents of the lease, or that he in any way misled them. The clause under consideration was printed as a separate paragraph and in the same type as the following paragraphs of the lease which set out all of the important terms and conditions upon which the grant was made. The clause is not misleading and it contains no inherent unfairness. Its apparent reasonable purpose is to prevent the leaving of small unleased pieces or strips of land, like the tract here in controversy, which may exist without the knewledge of one or both of the parties by reason of incorrect surveying, careless location of fences, or other mistake.

The judgments of the trial court and the Court of Civil Appeals, in so far as they affect or relate to the seven-eighths leasehold or working interest covering and affecting six-sevenths of the oil, gas, and other minerals in the tract of land in controversy, are reversed, and judgment is here rendered that defendants in error H. D. Bennett, Mrs. Katherine Ryan, Geo. W. Scheultz and John G. Phillips take nothing by their suit and claims as to the said leasehold or working interest, and plaintiff in error Sun Oil Company is hereby adjudged to be the owner of the seven-eighths leasehold or working interest covering and affecting six-sevenths of the oil, gas, and other minerals in the tract of land in controversy through and under the oil and gas lease executed by Malinda Schuyler and Horace Schuyler to Sun Oil Company of date July 21, 1930. In other respects the judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion adopted by Supreme Court June 5, 1935.

Rehearing overruled July 10, 1935.