**H. P. ALLISON et al., Appellants,**

**v.**

**R. E. SMITH et al., Appellees.**

No. 3177.

Court of Civil Appeals of Texas.

Eastland.

June 17, 1955.

Rehearing Denied July 8, 1955.

Snodgrass & Smith, Neill & Lewis, San Angelo, for appellant.

Bryan, Suhr & Bering, Houston, Sentell, Rosser & Willbern, Snyder, Park & Hemp-

hill, Snyder, David W. Stephens, Fort Worth, for appellee.

GRISSOM, Chief Justice.

H. P. Allison and others sued R. E. Smith and others in trespass to try title to an undivided ¼th interest in the minerals in the Northeast ¼th of Section 124, Block 25, H. & T. C. Ry. Co. Survey in Scurry County and for an accounting for ¼th of the oil produced therefrom. Plaintiffs contend that a deed from Mrs. Clark to Mrs. Neely conveyed a half interest in the minerals in the Northeast ¼th of Section 124, although that quarter section was not specifically mentioned. See Allison v. Smith, Tex.Civ.App., 278 S.W.2d 940. In addition to a general denial and plea of not guilty, Smith answered that said deed conveyed an undivided ½ interest in the minerals in only the Southeast ¼th and Northwest ¼th of said section; that after the specific description of the land out of which a ½ interest in the minerals was conveyed, to-wit, the Northwest ¼th and Southeast ¼th, there was a general description which was intended to refer, and did refer, to the land specifically described and said deed did not convey any minerals in the Northeast ¼th of Section 124; that, if it should be held that said description did not as a matter of law limit said conveyance to the Southeast ¼th and the Northwest ¼th, it was ambiguous and Mrs. Clark intended to convey and Mrs. Neely knew she was purchasing a ½ interest in the minerals in only the Southeast and Northwest quarters and Mrs. Clark did not intend to convey and Mrs. Neely did not purchase any interest in the Northeast ¼th of said Section. Smith further alleged that Mrs. Neely paid Mrs. Clark an agreed consideration of $10 per mineral acre for a ½ interest in the minerals in the Southeast and Northwest quarters and that Mrs. Neely did not purchase and did not pay Mrs. Clark for any minerals in the Northeast ¼th of Section 124. The Keys answered to the same effect.

In answer to the only issue submitted, a jury found that Mrs. Clark did not intend to convey to Mrs. Neely an undivided ½ interest in the minerals in the Northeast ¼th of Section 124. The court rendered judgment for defendants and plaintiffs have appealed.

The judgment recites the court determined that the Clark-Neely deed was uncertain as to the land in which an undivided ½ interest in the minerals was intended to be conveyed; that its language was susceptible to more than one construction and the intention of the parties could not be obtained solely from the deed but must be determined from the language of the deed considered in the light of the facts and circumstances surrounding the transaction. The judgment recited said issue and answer. There followed a statement that the court, having considered the language of said deed, the facts and circumstances surrounding the transaction and the verdict of the jury, was of the opinion the law and facts were with defendants, and it was, therefore, decreed that plaintiffs take nothing.

The judgment recites that Gulf Oil Corporation had paid into court $105,142.76, representing the sum accrued to said ¼th mineral interest from October 1, 1952 to July 31, 1954 and that it was discharged from all liability "as regard such sum" and that Smith recover $91,912.41 thereof, which represented the amount withheld during said period which had accrued to his part of the working interest in the ⅞th mineral interest, title to which had been adjudged to be in Smith, and that all sums accruing to said mineral interest after August, 1954, should be paid to Smith. It was further ordered that the Keys recover $13,130.35, which represented the amount withheld during said period which had accrued to their ⅛th royalty interest in said ¼th mineral interest through July 31, 1954, title to which had been adjudged to be in the Keys, and that all sums accruing to such interests thereafter should be paid to the Keys.

The controlling question presented is whether said deed as a matter of law conveyed half the minerals in the Northeast

¼th of said Section, only the Northwest ¼th and the Southeast ¼th being specifically described therein, and, if not, what the parties intended.

On March 27, 1941, Bertha B. Clark executed a deed which recited she had sold to Nedra Neely (1) *"an undivided ½ interest in* and to all of *the* oil, gas and other *minerals* of every kind and character in, or under that certain tract or parcel of land situated in the County of Scurry, State of Texas, and described as follows:

(2) "The Southeast one-fourth (SE ¼) and the Northwest one-fourth (NW¼) of Section 124, Block 25, H. & T. C. Ry. Co. Surveys.

(3) "The Grantor, her heirs and assigns, hereby reserves the exclusive right to make and execute any and all future oil and gas leases *covering the herein conveyed property,* or any part thereof, without being joined therein by the Grantee, her heirs and assigns, but the Grantee, her heirs and assigns shall be entitled to participate in one-half of all bonuses, rentals, royalties and other benefits accruing or to accrue under any such future leases; and in the event the lease now covering said property shall become cancelled or forfeited, then in that event, the Grantee, her heirs and assigns shall have the prior right or option to lease *said property* for oil and gas, within a reasonable time after cancellation or forfeiture, at a price agreeable to the parties hereto, their heirs and assigns.

(4) "The parties however intend this deed to include and the same is hereby made to cover and include not only the above described land, but also any and all other land and interest in land owned or claimed by the Grantor in said survey or surveys in which the above described land is situated or in adjoining the above described land. Should the foregoing *particular* description for any reason prove incorrect or inadequate to cover the land

intended to be conveyed *as above specified* grantor agrees to execute such instrument or instruments that may be necessary to correct such *particular* description.

(5) "To Have and To Hold the said undivided interest in all of the said oil, gas and other *minerals* in, on and under said land, together with all and singular the rights and appurtenances thereto in any wise belonging, with the right of ingress and egress * * * and grantor herein for himself and his heirs, executors and administrators, hereby agrees to warrant and forever defend all and singular the said *interest in said minerals,* unto the said grantee, his heirs, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

(6) "This conveyance is made subject to any valid and subsisting oil, gas or other mineral lease or leases *on said land, including also any mineral lease,* if any, heretofore made or *being contemporaneously made from grantor to grantee;* but, for the same consideration hereinabove mentioned, grantor has sold, transferred, assigned and conveyed and by these presents does sell, transfer, assign and convey unto grantee, his heirs, successors and assigns, the same undivided interest (as the undivided interest herein above conveyed in the oil, gas and other minerals in said land) in all the rights, rentals, royalties and other benefits accruing or to accrue under said lease or leases from the above described land; to have and to hold unto grantee, his heirs, successors and assigns."

When Mrs. Clark executed said deed she owned the surface and minerals in the Northwest ¼th and Southeast ¼th and, also, in the Northeast ¼th of Section 124. She also owned Sections 123 and 145 in said Block 25. All said last three mentioned tracts adjoined the land specifically described. On the same day that Mrs. Clark executed said deed she executed two oil and

gas leases to Nedra Neely, one on the Northwest ¼th and one on the Southeast ¼th of Section 124. In each lease it was recited that for the purpose of calculating the rentals therein provided for each of said quarter sections was *estimated to comprise 160 acres, "whether it actually comprises more or less."* Said deed and two leases were executed, acknowledged before the same notary public and filed for record simultaneously.

In January, 1944, Mrs. Clark conveyed to Marvin Key the North ½ of Section 124 "subject to any outstanding oil, gas and mineral interest heretofore sold and conveyed and any such outstanding mineral interest is here reserved * * *."

On June 30, 1948, Key and wife executed an oil and gas lease to R. E. Smith on the North ½ of Section 124, which recited it contained "320 acres more or less." Said lease further provided that:

"In the event a re-survey of said lands shall reveal the existence of excess and/or vacant lands lying adjacent to the lands above described and the lessor, his heirs, or assigns, shall, by virtue of his ownership of the lands above described, have preference right to acquire said excess and/or vacant lands, then in that event this lease shall cover and include all such excess and/or vacant lands which the lessor, his heirs, or assigns, shall have the preference right to acquire by virtue of his ownership of the lands above described as and when acquired by the lessor; and the lessee shall pay the lessor for such excess and/or vacant lands at the same rate per acre as the cash consideration paid for the acreage hereinabove mentioned."

On June 2, 1941, Nedra Neely and husband executed a mineral deed to Ordovician Oil Company conveying an undivided ¼th interest in the minerals in land specifically described as the Southeast ¼th and Northwest ¼th of Section 124, subject to the terms and conditions in the Clark-Neely deed, to which reference was made. After said specific description there was a reference to the Clark-Neely deed and paragraphs 4 and 6 of said deed were substantially copied therein.

Appellants' principal contention is that when all the provisions of the Clark-Neely deed are considered an intention is clearly and unmistakably shown to convey one-half the minerals in the Northeast ¼th of Section 124, and, therefore, extrinsic evidence of the parties' intention was not admissible; that there was no occasion for application of rules of construction and the court should have instructed a verdict for appellants.

Appellees' principal contentions are stated in the first and seventh points to the effect that (1) the court did not err in refusing to instruct a verdict for appellants because the general description in the Clark-Neely deed cannot reasonably be construed to have been intended to embrace any land other than that particularly described and, if the meaning of the deed is doubtful and it is susceptible to more than one construction, the deed must be held to include not more than that particularly described when its language is considered in the light of the surrounding facts and circumstances and (7) that the court did not err in rendering judgment for defendants because Mrs. Neely did not acquire title to any minerals in the Northeast ¼th. In support of said points, appellees call attention to the fact that the specific description of the land out of which an interest in the minerals was conveyed was not followed immediately by the general description depended on by appellants, but by a provision reserving to Mrs. Clark and her assigns the exclusive right to execute leases on the "herein conveyed property" without the joinder of Mrs. Neely or her assigns and by a provision giving grantee an option to lease "said property"; that in the same paragraph with said general provision it was provided that if the "foregoing particular description" should prove inadequate to cover the land intended to be conveyed, "as above specified," Mrs. Clark would execute instruments necessary to correct such "particular" description;

that, following the habendum and warranty clauses, the deed provides it is subject to existing leases and those *"being contemporaneously made from grantor to grantee."*

As heretofore shown, Mrs. Clark executed and acknowledged two leases covering only the Southeast ¼th and the Northwest ¼th of Section 124 simultaneously with said deed which specifically described only the tracts leased and said leases and deed were filed for record at the same time. At the time Mrs. Clark executed said deed and two leases, in addition to the Northwest ¼th and the Southeast ¼th of Section 124, specifically described in said deed and two leases, she owned the Northeast ¼th of said section and all of sections 123 and 145, all in Block 25, H. & T. C. Ry. Co. Survey. All of said last three mentioned tracts adjoin the land particularly described in said deed. Mrs. Clark testified she received an agreed consideration of $10.00 per mineral acre, or $1,600.00, for ½ the minerals in the two quarter sections particularly described in the deed but that she received nothing for the Northeast ¼th of Section 124 or for Sections 123 and 145. She testified she sold and intended to convey ½ the minerals in the 320 acres specifically described; that she did not sell nor intend to convey any interest in the minerals in the Northeast ¼th; that she was not paid for any minerals in the Northeast ¼th and that prior to this suit no one had ever asserted to her any claim to any minerals therein and that no one had ever asked her to execute an instrument to correct the particular description in the deed.

Appellants rely chiefly on Sun Oil Co. v. Burns, Tex.Com.App., 125 Tex. 549, 84 S.W.2d 442, and Sun Oil Co. v. Bennett, Tex.Com.App., 125 Tex. 540, 84 S.W.2d 447, 452. The land not specifically described but held to have been conveyed in the Burns and Bennett cases consisted of narrow strips of land adjoining the land specifically described and contained 3.736 acres and 2.5 acres, respectively, which were added to tracts specifically described that contained 106.25 acres and 76 acres, respectively. In the Bennett case Judge Smedley, in holding

there was no evidence that a mutual mistake caused the inclusion of a narrow strip adjoining the land specifically described by virtue of a "Mother Hubbard" clause, stated the proper purpose of such a clause to be as follows:

"Its apparent reasonable purpose is to prevent the leaving of small unleased pieces or strips of land, like the tract here in controversy, which may exist without the knowledge of one or both of the parties by reason of incorrect surveying, careless location of fences, or other mistake."

■ The Supreme Court applied the rule, clearly applicable to the facts of those cases, that "'A particular description does not override a more general description of the land conveyed where it is manifest that the property covered by the words of particular description is not the whole of the property conveyed, and that the words of general description are intended to have an enlarging effect.'" [125 Tex. 549, 84 S.W.2d 447.]

Appellees would distinguish this case from said cases as follows: (a) In the Burns case the specific description of 100 acres was immediately followed by the general description. Here it was not. (b) The deeds in said cases were susceptible to only one interpretation, and on their face, they clearly and unmistakably showed an intention to convey land in addition to that particularly described. In this case the description is ambiguous and susceptible to more than one interpretation and the general description does not clearly and unmistakably show an intention to convey additional land to that particularly described. (c) In the Burns case the plaintiffs were seeking to add a small triangular strip of 3.736 acres, difficult to describe, to a tract of 106.25 acres. Here appellants are seeking to add 160 acres, easily described, and they could urge with almost equal force the same right to two adjoining sections, which could have also been easily described. (d) In said cases there was no provision for correcting an inadequate description. In the present

case there is. (e) In the Burns case the small strip sought to be added was not a separate and distinct tract. In this case appellants are seeking to recover the Northeast ¼th, which is as separate and distinct as either quarter section specifically described. (f) In the Burns case there was a lease of the "'land hereinafter described'", being 100 acres particularly described followed by a general description not capable of more than one interpretation and clearly manifesting an intention to convey additional land, while in this case the deed conveyed an undivided ½ interest in the minerals in a certain tract described as "The Southeast ¼ (SE¼) and the Northwest ¼ (NW¼) of Section 124, Block 25, H. & T. C. Ry. Co.," which particular description was not followed immediately by a general description but by a reservation of the exclusive power to execute leases and an agreement that Mrs. Neely should have an option to lease "said property." The only land theretofore mentioned was the Northwest and Southeast quarters and that was the only land described in the leases to Mrs. Neely.

If appellants' contention that, as a matter of law, the deed conveyed the Northeast ¼th should be sustained the specific description, the granting clause, the habendum clause and the warranty clause would have to be construed not to mean what they say. The specific description conveys an undivided ½ interest in only the minerals in the Southeast ¼th and the Northwest ¼th of Section 124. The granting clause, the habendum clause and the warranty clause refer only to minerals. The general description depended on by appellants does not purport to limit the conveyance to minerals but to convey land. Appellants' interpretation gives no reasonable meaning to the provision in the same paragraph with the general description that if the "particular" description should prove inadequate to convey the land intended the grantor should execute instruments necessary to correct the "particular" description.

A reasonable explanation of the intention of the parties in using the general description is indicated by the action of Key and wife who provided in Key's lease to Smith that in the event a survey should reveal the existence of excess or vacant land adjoining that described the lease should include such excess or vacant land and lessee should pay therefor the same price per acre paid for the land specifically described. We recognize that their interpretation is not binding on the parties to this suit but it appears to us to be the most reasonable explanation of the ambiguous language of the deed. It is significant that when Mrs. Clark executed and delivered the deed to Mrs. Neely she executed and delivered separate leases on the Northwest ¼th and the Southeast ¼th of Section 124 and described the land as it was described in the specific description in the deed and in each of said leases it was agreed that "for the purpose of calculating the (rental) payments hereinafter provided for said land is estimated to comprise 160 acres, whether it actually comprises more or less. This is rendered more significant by the fact that the deed, after the specific description and before the general, provided that the grantee should have the option to lease "said property" and in her leases Mrs. Clark described the land exactly as it was described in the specific description in the deed. If Mrs. Neely and Mrs. Clark knew that each of the quarter sections specifically described in said deed contained no excess or vacant land but that each contained exactly 160 acres there would have been no reason for Mrs. Neely and Mrs. Clark inserting the provision in their leases provided for in said deed that in paying delay rentals each tract should be treated as containing 160 acres, regardless of whether it contained more or less. There is strong evidence of a construction by the parties of the ambiguous deed to mean that they intended to convey only the Northwest and Southeast quarters. It would be reasonable to conclude they thought the deed conveyed minerals out of only the Northwest and Southeast quarters and they were uncertain as to the number of acres therein, so, they provided that for the purpose of paying rentals each quarter would be considered as containing 160 acres. If the mineral deed is

ambiguous, the execution of leases to Mrs. Neely on only the two quarter sections specifically described in the deed simultaneously with the execution of the deed, plus said quoted provision, fixing the number of acres on which rental was to be paid, at least tends to show the parties' interpretation of paragraph 4 of the Clark-Neely deed, the general description depended on by appellants, to mean exactly what the Keys put in their lease to Smith, that is, if the land particularly described as two quarter sections should be found to contain vacant or excess land that such was also intended to be conveyed. As so interpreted, there is a reasonable explanation for the insertion in the same paragraph with the general description of a provision for the execution of additional instruments to correct the "particular" description if it should prove inadequate. As interpreted by appellants, the general provision, in addition to including an additional 160 acres, purports to convey the land itself, not just an interest in the minerals, as the deed, when taken as a whole, manifests was the intention. So interpreted, the general provision is in conflict with, not only the granting clause, but also the habendum clause and to the warranty clause, the latter warranting only "said interest in said minerals."

Appellees say the Supreme Court in the Burns and Bennett cases simply stated the state policy announced in Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, 915 that:

"Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance".

It is evident Mrs. Clark did not intend to convey all land owned by her adjoining the two quarter sections specifically described. The statement by Judge Garwood in Haines v. McLean, Tex., 276 S.W.2d 777, 786, is appropriate here.

"To say that the instant deed shall be taken not only to grant a fee, despite its attempted limitations, but also to convey a fee half again or more greater in adjoining property, simply shocks the conscience * * *."

The quarter section claimed by appellant is no narrow strip that has ceased to be of importance to the grantor. The facts that compelled the decisions in the Burns and Bennett cases do not exist here. In said cases there was no provision casting doubt on the intention clearly expressed in the general description in the deeds there considered to convey land in addition to that particularly described. In the Bennett case, Judge Smedley said with reference to the "Mother Hubbard" clause [125 Tex. 540, 84 S.W.2d 452]:

"Its apparent reasonable purpose is to prevent the leaving of small unleased pieces or strips of land, like the tract here in controversy, which may exist without the knowledge of one or both of the parties by reason of incorrect surveying, careless location of fences, or other mistake."

That was probably the purpose intended by the general description in controversy here. The 160 acres, more or less, in the Northeast ¼th of Section 124, in controversy here, could not have existed without the knowledge of the parties. It did not exist by reason of incorrect surveying or careless location on the ground or any other apparent mistake.

■ There has never been a change in the rule announced by our Supreme Court in Cullers v. Platt, 81 Tex. 258, 16 S.W. 1003, 1005. The general rule there announced was approved by Judge Hickman in Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471, 475, but not applied because " * * * the grantor's true intention to convey the land covered by the general description clearly and unmistakably appears from the language of the entire instrument." It cannot be said of the general description in the Clark-Neely deed that it clearly and

unmistakably shows an intention to convey the land claimed under the general description.

■ The deed is ambiguous. The court did not err in admitting evidence of facts and circumstances surrounding the execution of the deed, the simultaneous execution of leases, which were provided for in the deed, and parol evidence of the parties' intention. Colquitt v. Eureka Producing Co., Tex.Com.App., 63 S.W.2d 1018; Humble Oil & Refining Co. v. Ellison, 134 Tex. 140, 132 S.W.2d 395, 398; Thomas v. Texas Osage Co-op Royalty Pool, Inc., Tex.Civ. App., 248 S.W.2d 201, 205 (R.N.R.E.), Id., Tex.Civ.App., 270 S.W.2d 450; 14 Tex.Jur. 1054; Regan v. Hatch, 91 Tex. 616, 45 S.W. 386, 387; 16 Am.Jur. 675, 680; Ellisor v. Kennedy, Tex.Civ.App., 128 S.W.2d 842, 844 (W.R.).

■ Appellants contend the court erred in permitting Mrs. Sullinger, formerly Mrs. Clark, to testify as to how many acres she sold and intended to convey; that she owned adjoining land, and in permitting her to identify it on a map and show its location with reference to the land in controversy and to testify that Mrs. Neely did not pay her anything for the Northeast ¼th; that Mrs. Neely paid her $1,600 for a one-half interest in the minerals in 320 acres. We think this evidence was not subject to the objections made and that parol evidence was admissible to show the intention of the parties in executing the ambiguous deed. Colquitt v. Eureka Producing Co., Tex.Com. App., 63 S.W.2d 1018, 1020; Humble Oil & Refining Co. v. Ellison, 134 Tex. 140, 132 S.W.2d 395, 398; Ellington v. Pirtle, Tex.Civ.App., 102 S.W.2d 524, 528 (Writ Dis.); Ellisor v. Kennedy, Tex.Civ.App., 128 S.W.2d 842, 844 (Writ Ref.).

■ Appellants contend the court erred in permitting introduction of two oil and gas leases executed, acknowledged and delivered by Mrs. Clark simultaneously with the deed in question. The deed provides for the execution by Mrs. Clark to Mrs. Neely of leases on "said property" particularly described in the deed when the existing lease terminated. The two leases did not include the Northeast ¼th, only the Northwest and Southeast quarters of said section. We think they were admissible as tending to prove a construction of the deed by the parties thereto and tending to establish the fact that they intended to convey a mineral interest in only the Northwest and Southeast quarters of said section. Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504, 508; 26 C.J.S., Deeds, § 100, p. 362; Gulf Coast Water Co. v. Hamman Exploration Co., Tex.Civ.App., 160 S.W.2d 92, 96 (Writ Ref.); Spell v. Hanes, Tex. Civ.App., 139 S.W.2d 229, 331; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1088, 85 A.L.R. 391; Gray v. Shaunfield, Tex.Civ.App., 212 S.W.2d 873, 875.

■ With the exception of the error next considered, we think reversible error is not shown and appellants' remaining points are overruled. The only issue submitted as a basis for the judgment inquired as to the intention of the grantor only. Appellants objected to said issue on the ground that a finding that Mrs. Clark did not intend to convey ½ of the minerals in the Northeast ¼th of Section 124 would not sustain a judgment for defendants and that said issue should also inquire as to the intention of Mrs. Neely. The objection was overruled. We think this was error for which the judgment must be reversed. Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 450; Superior Oil Co. v. Stanolind Oil & Gas Co., 150 Tex. 317, 240 S.W.2d 281, 284; St. Paul Fire & Marine Ins. Co. v. Culwell, Tex.Com.App., 62 S.W.2d 100, 101; Smulcer v. Rogers, Tex.Civ.App., 256 S.W.2d 120, 123 (R.N.R.E.); Clemmens v. Kennedy, Tex.Civ.App., 68 S.W.2d 321 (W.R.); 36 Tex.Jur. 747; 29 Tex.Jur. 704, 707; Kiggins v. Kennon, Tex.Civ.App., 197 S.W. 2d 182, 183 (W.R.); 10 Tex.Jur. 93, 105, 106; Harrell v. De Normandie, 26 Tex. 121, 127; Humble Oil & Refining Co. v. Ellison, 134 Tex. 140, 132 S.W.2d 395, 398. (The italics in the opinion are those of the court.)

The judgment is reversed and the cause remanded.