**H. S. EARP, Appellant,**

v.

**FIRST STATE BANK OF ABILENE,**
Appellee.

No. 3694.

Court of Civil Appeals of Texas.

Eastland.

March 30, 1962.

Rehearing Denied April 20, 1962.

Scarborough, Black & Tarpley, Abilene, for appellant.

Smith & Erwin, Abilene, for appellee.

COLLINGS, Justice.

This suit was brought by the First State Bank of Abilene against Homer Glenn Earp and H. S. Earp. Plaintiff sought to recover from Homer Glenn Earp on four renewal promissory notes executed on January 14, 1960. H. S. Earp was joined as a defendant because of a guaranty executed by him on March 5, 1957, which purported to guarantee payment not to exceed $1,000.00 on Homer Glenn Earp's past and future indebtedness to plaintiff. Default judgment was entered against Homer Glenn Earp. Plaintiff First State Bank of Abilene moved for summary judgment against H. S. Earp and affidavits were filed both in support of and in opposition thereto. Plaintiff's motion for summary judgment was granted and H. S. Earp has appealed.

Appellant H. S. Earp presents two points urging that the court erred in granting summary judgment for appellee (1) because controlling fact issues existed, and (2) because the written guaranty agreement did not correctly reflect the agreement of the parties and fact issues existed concerning the question of mutual mistake requiring reformation of the instrument.

The guarantee executed by H. S. Earp on March 5, 1957, a copy of which was attached to plaintiff's pleadings and relied upon in support of the summary judgment, provided as follows:

"For the sum of one dollar and other valuable consideration, I promise to pay to the First State Bank of Abilene, Texas, ........ all indebtedness which Homer G. Earp now owes aforesaid bank, or may at any time hereafter owe said bank, whether such indebtedness be joint or several, primary or secondary, contract or tort; this obligation to be a continuing promise, and to apply to all obligations now in existence or hereafter owing as the same arise.

We hereby join in any request that may be made for indulgence or extension of any present or future indebtedness. We waive diligence, presentment, notice, protest, and suit, on the part of the bank in the collection of any indebtedness, and agree that the bank shall be under no obligation to notify us of its acceptance of this guarantee, nor of any advances made or credit extended, nor of the failure of the aforesaid debtor to pay any indebtedness. We agree that said bank may, without notice to us, make any changes whatsoever in any indebtedness owing to it or in terms of payment, and may release or exchange collateral and other security.

Provided, however, we shall not be required to pay under this guarantee an aggregate sum of more than $1000.00 Dollars, which sum, when paid by us, may be applied by the bank at its discretion, upon any indebtedness above mentioned, and shall discharge this obligation."

In support of its motion for summary judgment appellee First State Bank also attached the affidavit of its Vice-President, Mr. Lester S. Ellis. He stated in substance that H. S. Earp executed a personal guaranty in writing on March 5, 1957, in favor of said bank for the benefit of Homer Glenn Earp; that on January 14, 1960, Homer Glenn Earp executed and delivered to appellee four certain renewal and extension promissory notes amounting to an aggregate of $4,155.19, bearing 8% interest and providing for the usual ten percent attorney's fee; that the notes were secured by a chattel mortgage on four described automobiles; that Homer Glenn Earp defaulted on the notes; that the automobiles were sold at the best prices available and the proceeds applied and credited to the notes, leaving a balance of $2,430.19, and that both Homer Glenn Earp and H. S. Earp refused and still refuse to pay any of the remaining balance due on said notes.

In appellant's pleadings and in his answer to the motion for summary judgment it was contended that the guaranty had expired and

that he was no longer bound thereby; that the agreement of guaranty was for a limited period of time, intended to cover specific transactions and did not extend to the transaction sued upon. Appellant also attached to his answer to appellee's motion for summary judgment affidavits of himself and of one Wilton O. Davis. The affidavit of appellant H. S. Earp stated that the loan secured by his guarantee was intended to cover only the initial transaction between the bank and Homer Glenn Earp and that the obligation under that transaction was paid within approximately eight months and that appellant's obligation terminated at that time. The affidavit of Wilton O. Davis stated that he was an officer of appellee bank in 1957 and made the agreement with H. S. Earp by which he guaranteed a line of credit to be extended to his nephew, Homer G. Earp, in an amount not to exceed $1,000.00; that appellant's guaranty was intended to cover the obligations of Homer Glenn Earp so long as he was in the used car business. The affidavit of Mr. Davis also stated that the line of credit secured by appellant's guaranty was paid in October or November of 1958 and that the guaranty was thereby fully discharged as of that time and should have been returned to Mr. H. S. Earp.

The bank thereupon filed another affidavit by its Vice-President, Mr. Ellis, which stated, in substance, that an automobile floor plan arrangement was begun by the bank with Homer Glenn Earp on March 11, 1957, under an agreement that the bank would hold title to the cars involved and that appellant H. S. Earp would give the bank his personal guaranty, not to exceed $1,000.-00 securing this line of credit; that H. S. Earp executed his guaranty on March 5, 1957; that Wilton O. Davis, an employee of the bank at the time of the guaranty agreement, severed his relations with the bank on September 30, 1958, and was not an employee of the bank during October and November 1958, nor at any time subsequent thereto; that Homer Glenn Earp's floor plan account with the bank was never paid in full; that the lowest balance which he ever owed to the bank during the period in question was in the months of October and November, 1958, at which time the balance was $1,175.00 as evidenced by a copy of the bank's ledger sheet which was attached to and made a part of the affidavit. The ledger sheet reflects the condition of said account from September 11, 1958 to April 14, 1960; that on the last mentioned date the outstanding balance was $2,430.19, which was at that time written off by the bank as a bad debt, which was reflected by the ledger sheet. The affidavit of Mr. Ellis further showed that Homer Glenn Earp continued floor planning automobiles with the bank until January 14, 1960, at which time the notes on said cars were extended in order to give him additional time to sell the cars; that it was understood that no additional automobiles would thereafter be floor planned. The affidavit stated that when Homer Glenn Earp defaulted on these renewal notes, the cars were repossessed and sold at the best price available; that repeated demands were made to Homer Glenn Earp and to H. S. Earp to honor their obligations under the notes and under the guaranty agreement, but that neither ever made any attempt to fulfill his obligation.

In our opinion the court did not err in granting appellee's motion for summary judgment. No controlling fact issue existed which required determination. Appellee First State Bank, by its pleadings and affidavits, showed that it was entitled to recover from appellant H. S. Earp on his written guaranty.

■ The effect of appellant's contention in defense of the claim against him is that the written guaranty which he signed, does not correctly set out the agreement which was made between the parties. It is a well settled general rule that parol evidence is not admissible to contradict or modify the provisions of such an agreement. 27 Tex. Jur.2d 333–334; Wilkins v. Carter, 84 Tex. 438, 19 S.W. 997; Schneider-Davis Com-

pany v. Hart, 23 Tex.Civ.App. 529, 57 S.W. 903.

A mutual mistake concerning a material fact does constitute a ground for avoiding a contract but the mistake must be mutual rather than unilateral. 13 Tex. Jur.2d 476; Sun Oil Company v. Bennett, 125 Tex. 540, 84 S.W.2d 447. Appellant H. S. Earp did not plead mutual mistake and in our opinion the affidavits submitted by him do not show a mutual mistake. Appellant stated that his guaranty was intended to cover only the initial transaction between the bank and Homer Glenn Earp and that the obligation under that transaction was fully paid. No showing was made that the bank intended appellant's guaranty to cover only the initial transaction with Homer Glenn Earp. The provision of the written agreement was directly to the contrary. Any mistake of appellant H. S. Earp in this respect was unilateral and not mutual.

Mr. Wilton Davis, who was an officer of appellee bank in 1957, when the guaranty of H. S. Earp was made, stated in his affidavit that the guaranty which he "took from Mr. Earp was intended to cover the floor planning for Homer G. Earp while he was in the used car business." It was not shown by appellant H. S. Earp that he, likewise, understood that his guaranty was to cover floor planning for Homer G. Earp "while he was in the used car business." Even if it should be held, however, that the understanding of Mr. Davis concerning the intention of the parties amounted to a mutual mistake upon which appellant could rely, there is still no issue of fact which could be determined in a manner which would relieve appellant from liability. Mr. Ellis, Vice-President of appellee bank, stated by affidavit that Homer Glenn Earp's floor plan account with the bank was never paid in full; that he continued floor planning automobiles with the bank until January 14, 1960, on which date he executed the four notes which are the basis of this suit against him; that such notes constituted an extension of the indebtedness already owed by

Homer Glenn Earp and at that time it was understood that no additional automobile would thereafter be floor planned. Appellant does not deny that Homer Glenn Earp continued floor planning automobiles with the bank until January 14, 1960, and there is no showing to the contrary. He did not show that the obligations incurred by Homer Glenn Earp to the bank during that period were paid. If the affidavit of Mr. Davis to the effect that H. S. Earp's guaranty was intended to cover floor planning for Homer G. Earp "while he was in the used car business", is accepted as true and available to appellant as a defense, appellant is still, under the undisputed facts, liable under his guaranty.

Mr. Davis did state in his affidavit that the line of credit which the bank extended to Homer G. Earp was paid out in October or November of 1958, and that the guaranty was fully discharged as of that time. It is shown on behalf of the bank, however, by the affidavit of Mr. Lester Ellis, that Mr. Davis left the employment of the bank on September 30, 1958, and was not an employee of the bank during October and November of 1958, nor at any time subsequent to September 30, 1958. Appellant nowhere denies this fact. Affidavits in support of or in opposition to a motion for summary judgment must be such that they would constitute competent evidence which would be admissible on the trial of the case under the rules of evidence. Fonsville v. Southern Materials Company, Tex.Civ. App., 239 S.W.2d 885 (Ref. N. R. E.). The statement in the affidavit of Mr. Davis that the line of credit extended to Homer G. Earp was paid out in October or November of 1958, was obviously a conclusion since under the undisputed evidence he was not at that time with the bank or in position to know the condition of the account. His conclusion was not admissible. In addition to this it is undisputed that the notes sued upon were thereafter executed by Homer Glenn Earp in extension of indebtedness to the bank incurred "while he was in the used

car business." Appellant did not show and we do not understand him to make any contention that these notes or the indebtedness which they renewed and extended have been paid. He is therefore liable under his guaranty.

The judgment of the trial court is affirmed.