**Opinion filed March 15, 2012**



## In The

# Eleuenth Court of Appeals

_____

### No. 11-09-00348-CV

_____

## RAVEN RESOURCES, LLC, Appellant
## V.
## LEGACY RESERVES OPERATING, LP, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV 46609**

### O P I N I O N

On original submission, we issued our opinion in which we reversed the judgment of the trial court and rendered in part and remanded in part. Legacy Reserves Operating, LP subsequently filed a motion for rehearing. We granted Legacy's motion for rehearing, withdrew our former opinion and judgment, and issued a subsequent opinion and judgment in which we affirmed the trial court's judgment. However, we apparently did not request that Raven Resources, LLC respond to Legacy's motion for rehearing. Therefore, we withdrew our second opinion and judgment and asked Raven to respond to Legacy's motion for rehearing. Raven has now responded to the motion, and Legacy has replied to Raven's response. We grant Legacy's motion for rehearing, withdraw our original opinion and judgment, and substitute the following opinion and judgment therefor. We affirm the trial court's take-nothing judgment it entered against Raven.

Among other related business pursuits, Raven buys and sells various oil and gas wells and leases.

Raven was interested in selling, and Legacy was interested in buying, certain oil and gas related properties. At the time that the transaction giving rise to this lawsuit began between Raven and Legacy, Michael L. Lee was employed by Raven; he assisted in the evaluation of properties that Raven was interested in purchasing or selling. Lee was Raven's primary contact in the negotiations with Legacy for the purchase and sale of the property that is involved in this lawsuit.

After extended negotiations between Lee and Legacy, Legacy forwarded a draft of a purchase and sale agreement to Raven. The draft was not signed by Legacy, was dated June 22, 2007, and contained the word "DRAFT." The draft agreement did not contain any detail describing the properties to be conveyed. The purchase price to be paid by Legacy, as stated in the draft agreement, was $26,626,000. David Stewart, on behalf of Raven, as its sole managing member, signed the draft agreement and returned it to Legacy. After having performed its due diligence and after continued negotiations with Lee, Legacy determined that there were certain adjustments that needed to be made in the detail and extent of the property interests and other matters, including price, before it would complete the transaction.

In a subsequent draft of the purchase and sale agreement dated July 11, 2007, Legacy made those changes and reduced the purchase price accordingly to $20,300,000. The July 11 agreement also provided that Legacy would pay 5% of the $20,300,000 purchase price as earnest money. Legacy sent the July 11 agreement to Lee. However, Lee did not tell Stewart about the changes and the subsequent agreement but, instead, forged Stewart's name to the agreement and returned it to Legacy. The summary judgment evidence shows that Lee had no authority to sign documents on behalf of Raven or to bind Raven to any agreement; that authority was held only by David Stewart, Raven's sole managing member. Raven does not claim that Legacy knew about the forgery. On July 13, 2007, Legacy paid the 5% earnest money payment to Raven in accordance with the July 11 agreement.

On July 31, 2007, Stewart signed a "Certificate" wherein he certified that he was Raven's managing member "well prior to the July 11, 2007 execution of [the] Purchase and Sale Agreement." Stewart also certified that he served as Raven's managing member "through the

2

date of the sale contemplated thereby." Additionally, among other things, he certified that he had been duly authorized and directed "to execute the above-described Agreement and to close the sale contemplated thereby."

The parties closed the transaction by mail. By thirty-five "assignments and bills of sale" dated August 3, 2007, Raven purported to transfer to Legacy the various interests and properties set out in the July 11 agreement. The assignments specifically incorporated the terms of the July 11 agreement. Also on August 3, 2007, Legacy transferred $18,925,000.03, the balance due under the specific terms of the July 11 agreement, into Raven's bank account. Raven used the money to pay debts and partners. Some three weeks after Raven executed the assignments, and after it had paid debts and partners, Raven discovered that the amount deposited into its bank account by Legacy was $6,326,000 less than the $26,626,000 purchase price set out in the June 22 draft.

Raven subsequently filed this lawsuit against Legacy. Legacy filed counterclaims against Raven. With the exception of breach-of-contract counterclaims asserted by Legacy against Raven for damages, indemnification, and specific performance (which were severed by the trial court), all of the other claims were covered in motions for summary judgment filed by Raven and by Legacy.

In Raven's motion for partial summary judgment, it sought a declaration that the July 11 agreement was void due to forgery. It also sought a judgment rescinding the thirty-five assignments based upon mutual mistake as to the sales price. Raven did not seek a summary judgment on its claim for unjust enrichment.

Legacy also filed a motion for partial summary judgment in which it asked the trial court to enter summary judgment that Raven take nothing by any of its claims. Legacy also asked the trial court to declare the July 11 agreement to be valid and enforceable because Raven had ratified and adopted it, because Raven was estopped to deny that it had ratified the July 11 agreement, and because Raven had waived the right to rescind the assignments. In the alternative, Legacy sought a declaration that, because the terms of the July 11 agreement were incorporated into each of the assignments, the assignments were valid and enforceable agreements.

3

The trial court denied the motion filed by Raven, but it granted the motion filed by Legacy and entered a take-nothing judgment against Raven on the claims that Raven had made. The trial court did not state the reasons for its ruling. The trial court severed Legacy's remaining counterclaims, thus creating a final appealable judgment.

On appeal, Raven claims in one issue that the trial court erred when it granted Legacy's motion for partial summary judgment. In sub-issues, Raven claims that the trial court erred because the July 11 agreement was forged and therefore void as a matter of law, because Raven did not adopt or ratify the July 11 agreement, because incorporation of the July 11 agreement into the assignments did not render it valid, because Raven was not estopped from denying that it ratified the July 11 agreement or that it was incorporated into the assignments, and because Raven was entitled to relief on its claim for unjust enrichment.

In response, Legacy takes the position that the terms of the July 11 agreement were properly incorporated into each of the assignments and that, therefore, the assignments are valid and enforceable. Legacy also maintains that, by its actions, Raven ratified the July 11 agreement. Legacy reasons, therefore, that, for either of those reasons, the trial court was correct when it granted Legacy's motion for partial summary judgment and when it denied Raven's motion for partial summary judgment.

Both of the motions for partial summary judgment were traditional ones. TEX. R. CIV. P. 166a(c). We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Rule 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). In order for a defendant to be entitled to summary judgment against the plaintiff's claims, it must either disprove an element of each of the plaintiff's causes of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek*

*Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides and determine all questions presented. If we determine that the trial court erred, we must render the judgment that the trial court should have rendered. *Valence Operating*, 164 S.W.3d at 661. When a trial court does not specify the grounds it relied upon to grant the summary judgment, we must affirm the summary judgment if any of the grounds stated in the motion for summary judgment are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000).

Raven is correct in its argument that the summary judgment evidence shows that the July 11 agreement was forged and therefore invalid. Because it was forged, the agreement was void. *Garcia v. Garza*, 311 S.W.3d 28, 44 (Tex. App.—San Antonio 2010, pet. denied); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ denied).

While it is true that a reference to a void agreement references nothing, we have come to the conclusion that we need not decide the effect of that principle in this case and that the principle is not the end of the inquiry here. *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Here, the parties did more than merely reference the void July 11 agreement in the assignments—they specifically incorporated the terms of that agreement into the assignments. Therefore, the parties made the actual terms of the July 11 agreement a part of the content of the assignments the same as any other term appearing in the assignments, regardless of whether the July 11 agreement was void. The assignments became the operative and controlling documents, and they contained those specific terms that had been incorporated into them. The assignments are valid and enforceable

5

in and of themselves, and the incorporation of the terms of the forged July 11 agreement did not void the assignments. *Nelson*, 889 S.W.2d at 318.

We are not to be taken as holding that the July 11 forged agreement somehow received a breath of new life when Stewart signed the thirty-five August 3, 2007 assignments. The July 11 agreement was and remains void because it was forged. Instead, the assignments constituted new, independent, enforceable agreements with all of the terms and conditions contained within them, including those specifically incorporated into them from the July 11 forged agreement. Those assignments are enforceable by their own terms, and the July 11 agreement remains as void as it was from its inception.

If the trial court granted summary judgment on the basis that the thirty-five assignments were valid and enforceable, then it did not err. Because we have held that the assignments are valid and enforceable, we need not discuss whether Raven adopted or ratified the July 11 agreement.

Raven argues that, even if the assignments are valid, it is entitled to rescind them because of the existence of a mutual mistake as to price. A mutual mistake exists when both parties to the transaction entertain a belief that a present material fact exists when that present material fact does not in fact exist. *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 588–89 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The burden to show the existence of a mutual mistake is on the party claiming mutual mistake. *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied). The burden was on Raven to raise a fact issue showing that it and Legacy were acting under the same misunderstanding of the same material fact. *Johnson v. Conner*, 260 S.W.3d 575, 581 (Tex. App.—Tyler 2008, no pet.). The issue is not determined from the subjective statements regarding the parties' intent but, rather, by the objective circumstances surrounding the execution of the agreement. *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009). We must consider the language of the agreement. *See, e.g., Sun Oil Co. v. Bennett*, 84 S.W.2d 447, 452 (Tex. 1935).

Here, the assignments contained clear language incorporating the terms of the July 11 agreement. A party is presumed to know the contents of documents that it signs, including those specifically incorporated by reference. *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009). "[P]arties to a contract have an obligation to protect themselves by reading what they

6

sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008). Under the facts of this case, Raven was under that obligation when Stewart signed the assignments.

Because the terms of the July 11 agreement had become, by specific incorporation, terms of the new and valid assignments, Raven was presumed to know what those terms were. *See Int'l Profit*, 286 S.W.3d at 923. Again, it is the objective and not the subjective that controls the answer as to whether there was a mutual mistake. Moreover, Raven presented no summary judgment evidence that would raise a fact issue that Legacy was operating under any mistake as to the assignments, much less one that was shared mutually with Raven.

We hold that, as a matter of law, the assignments constituted valid, enforceable agreements and that they are binding upon Raven and Legacy. Because the summary judgment evidence did not raise an issue regarding mutual mistake, the trial court did not err when it denied Raven's claim to rescission. As stated above, because we have held that the assignments constitute valid, enforceable agreements, we need not address the issues on appeal relating to ratification and adoption.

Because Legacy asked the trial court to enter a take-nothing judgment on all of Raven's claims, we will address Raven's claim for unjust enrichment. Unjust enrichment claims are based in quasi-contract. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000). Generally, with certain exceptions not applicable here, there can be no recovery for unjust enrichment when an express contract covers the subject matter of the dispute. *Id.* We have held that there is an express agreement that governs the parties and the issues in this case. Therefore, the trial court did not err when it granted Legacy's motion for summary judgment in this regard.

We overrule all of Raven's issues on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

March 15, 2012                                    CHIEF JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

7